# STATE OF MICHIGAN

# COURT OF APPEALS

JOHN C. SPRENGER,

        Plaintiff-Appellant/Cross-Appellee,

v

EMILY R. BICKLE,

        Defendant-Appellee/Cross-
        Appellant.

FOR PUBLICATION
October 23, 2014
9:15 a.m.

No.   317822
Benzie Circuit Court
LC No.   12-009468-DP

Before:  MURPHY, C.J., and SAWYER and M.J. KELLY, JJ.

MURPHY, C.J.

Plaintiff appeals as of right the trial court's order granting defendant's motion to dismiss plaintiff's complaint regarding paternity and denying plaintiff's motion for genetic testing. Defendant cross-appeals that same order with respect to the trial court's denial of her request for an award of attorney fees and costs as sanctions under MCR 2.114.  We affirm.

The paternity dispute between the parties, and more specifically the issue regarding plaintiff's standing to pursue a paternity complaint, was previously before this Court, resulting in a published opinion in *Sprenger v Bickle*, 302 Mich App 400; 839 NW2d 59 (2013).  The basic factual premise of the litigation was previously set forth by this Court as follows:

> Plaintiff alleges that he is the biological father of a minor child born to defendant in November 2011, while she was lawfully married to someone else. Plaintiff and defendant were briefly engaged after defendant's divorce from Adam Bickle in April 2011. Although the parties dispute whether defendant was pregnant before her divorce, mutual friends of the couple and members of both their families assert that within days of the divorce, defendant and plaintiff were sharing the news that they were expecting a child. The engagement between plaintiff and defendant ended; in August 2011, defendant remarried Adam and they were still married when she gave birth three months later.

> In December 2011, plaintiff filed a paternity action under the Paternity Act[, MCL 722.711 *et seq.*], alleging himself to be the biological father of the child and requesting the court to determine issues of legal and physical custody, parenting time, and child support. In response, defendant filed a motion to dismiss, asserting lack of standing, MCR 2.116(C)(5), and failure to state a claim

-1-

on which relief could be granted, MCR 2.116(C)(8). In an April 6, 2012 ruling, the circuit court determined that plaintiff did not have standing and granted defendant's motion to dismiss[.] [*Id.* at 402-403.]

This Court affirmed, ruling that the trial court correctly determined that plaintiff lacked standing under the Paternity Act. *Id.* at 404-405. The panel observed that "[u]nless and until defendant and her husband ask a court to declare that the child was born out of wedlock, plaintiff lacks standing to claim paternity under the Paternity Act." *Id.* at 404. The Court concluded its opinion by stating:

> [T]he lower court dismissed plaintiff's case for lack of standing just weeks before the Revocation of Paternity Act became effective. Plaintiff filed a separate lawsuit under this new act, and that case is still pending. We have not been called upon to decide whether plaintiff has standing under the Revocation of Paternity Act. Rather, this case concerns whether plaintiff has standing under the Paternity Act. The majority holds the trial court correctly determined that he does not. [*Id.* at 409.]

We are now confronted with plaintiff's new action regarding paternity brought pursuant to the Revocation of Paternity Act (RPA), MCL 722.1431 *et seq.*, which was dismissed on the basis that plaintiff once again lacked standing. The RPA generally provides a court with authority to "[d]etermine that a child was born out of wedlock" and to "[m]ake a determination of paternity and enter an order of filiation[.]" MCL 722.1443(2)(c) and (d). MCL 722.1441 "governs an action to determine that a presumed father is not a child's father," MCL 722.1435(3), and this is the nature of plaintiff's action in this case. Plaintiff's new suit was predicated and relied on MCL 722.1441(3)(a) and (c), which provide in pertinent part:

> (3) If a child has a presumed father, a court may determine that the child is born out of wedlock for the purpose of establishing the child's paternity if an action is filed by an alleged father and any of the following applies:
>
> (a) All of the following apply:
>
> (*i*) The alleged father did not know or have reason to know that the mother was married at the time of conception.
>
> (*ii*) The presumed father, the alleged father, and the child's mother at some time mutually and openly acknowledged a biological relationship between the alleged father and the child.
>
> (*iii*) The action is filed within 3 years after the child's birth. The requirement that an action be filed within 3 years after the child's birth does not apply to an action filed on or before 1 year after the effective date of this act.
>
> (*iv*) Either the court determines the child's paternity or the child's paternity will be established under the law of this state or another jurisdiction if the child is determined to be born out of wedlock.

. . .

(c) Both of the following apply:

(*i*) The mother was not married at the time of conception.

(*ii*) The action is filed within 3 years after the child's birth. The requirement that an action be filed within 3 years after the child's birth does not apply to an action filed on or before 1 year after the effective date of this act. [¹.]

As clearly evident when examining these provisions, MCL 722.1441(3)(a) is concerned with situations in which the child at issue was conceived during wedlock, while MCL 722.1441(3)(c) regards situations wherein the child was not conceived during the marriage, negating the need to supply the extra proofs required under subsection (3)(a). Because of questions concerning the timing of conception here in relationship to entry of the divorce judgment, plaintiff chose to cover both possibilities encompassed by the two subsections. The trial court, following an evidentiary hearing, dismissed the new paternity action and denied plaintiff's motion for genetic testing. The court found that plaintiff had not demonstrated that conception occurred after the divorce judgment was entered for purposes of MCL 722.1441(3)(c), and that plaintiff knew defendant was married at the time of conception for purposes of MCL 722.1441(3)(a), if conception had actually occurred during the marriage. The trial court expressed that "the medical testimony demonstrated that it was highly likely that the defendant was married at the time of conception." The trial court declined awarding defendant any costs or attorney fees, given that the RPA was new and plaintiff made a "legitimate run" under the RPA.

On appeal, plaintiff challenges the trial court's findings under MCL 722.1441(3)(a) and (c). We initially note that plaintiff repeatedly speaks of the court's alleged failure to draw all inferences in a light most favorable to plaintiff; however, summary disposition principles are not applicable here, as the court conducted an evidentiary hearing and made factual findings based on the evidence presented. Under the RPA, a trial court is permitted to conduct an evidentiary hearing "at its discretion when there are contested factual issues and a hearing would assist the trial court in making an informed decision on the issue[s]." *Parks v Parks*, 304 Mich App 232, 239-240; 850 NW2d 595 (2014). "When reviewing a decision related to the [RPA], this Court reviews the trial court's factual findings, if any, for clear error[,]" which occurs when this Court is firmly and definitely convinced that a mistake was made. *Glaubius v Glaubius*, __ Mich App __; __ NW2d __, issued July 15, 2014 (Docket No. 318750), slip op at 3, citing *Parks*, 304 Mich

---

[1] Plaintiff, as "a man who by his actions could have fathered the child," is the "alleged father." MCL 722.1433(3). And Adam Bickle, as "a man who is presumed to be the child's father by virtue of his marriage to the child's mother at the time of the child's . . . birth," is the "presumed father." MCL 722.1433(4). We also note that plaintiff additionally cited MCL 722.1437(2) in his complaint in support of his assertion that he had standing. However, MCL 722.1437 addresses revocation of an acknowledgment of parentage, and plaintiff eventually stipulated to the withdrawal of the claim, considering that no such document ever existed.

App at 237. Our review is de novo with respect to construction of the RPA. *Glaubius*, slip op at 3.

With respect to the requirement in MCL 722.1441(3)(a)(*i*)("alleged father did not know or have reason to know that the mother was married at the time of conception"), we shall begin with the assumption that the child was conceived during defendant's marriage to Adam Bickle, considering that conception during wedlock is a necessary attribute of proceeding under subsection (3)(a). Plaintiff specifically testified that he knew defendant was married up until April 8, 2011, when defendant's divorce from Bickle was finalized. And plaintiff also conceded, as did defendant, that plaintiff and defendant engaged in sexual relations before entry of the divorce judgment. Therefore, keeping in mind for now our conception-timing assumption, plaintiff necessarily failed to establish that he did not know that defendant was married at the time of conception as required by MCL 722.1441(3)(a)(*i*). Indeed, the evidence conclusively established the contrary.

Plaintiff argues that because the date of conception could conceivably have been either before or after the divorce was finalized, it could not be concluded that he knew or had reason to know that defendant was married at the time of conception. This argument fails to appreciate the structure of MCL 722.1441 and the relationship between and functions of subsections (3)(a) and (c). Again, if conception occurred during wedlock, subsection (3)(a) needs to be further examined and subsection (3)(c) is rendered irrelevant or unsupportable, whereas if conception occurred outside of wedlock, subsection (3)(c) is triggered and subsection (3)(a) is rendered irrelevant or unsupportable. In analyzing MCL 722.1441(3)(a), there needs to be a finding or an assumption that conception occurred during the marriage. Under plaintiff's faulty theory, any time an uncertainty exists regarding whether conception occurred inside or outside wedlock, subsection (3)(a)(*i*) would be established, which clearly was not the intent of the Legislature. Here, if the child was conceived during the marriage, plaintiff was fully aware that defendant was still married given his testimony. MCL 722.1441(3)(a) clearly envisions and applies to circumstances in which a male has sexual intercourse with a married female, not knowing her to be a married woman at the time, nor with adequate information such that he should have known about her marital status. When there is uncertainty as to whether conception occurred before or after entry of a divorce judgment, the better-framed question for purposes of analyzing MCL 722.1441(3)(a)(*i*) might involve asking whether the alleged father knew or had reason to know that the child's mother was married before her divorce was finalized. Plaintiff did not and cannot establish standing under MCL 722.1441(3)(a) in light of his testimony that he knew defendant was married prior to April 8, 2011, when the divorce was finalized.[2]

---

[2] Working together, subsections (3)(a) and (c) can provide an alleged father with standing even where it is impossible to determine whether conception occurred before or after the finalization of a divorce. In that circumstance, if the alleged father did not know or have reason to know that a child's mother was married before entry of a divorce judgment, and if the other requirements in subsection (3)(a)(*ii*) through (*iv*) were satisfied, the alleged father could proceed, as either subsection (3)(a) or (c) would have been definitively established, despite being unable to pinpoint the specific subsection that was established.

With respect to the requirement in MCL 722.1441(3)(c)(*i*)("mother was not married at the time of conception"), we hold that the trial court did not clearly err in finding that plaintiff failed to demonstrate that conception occurred outside of marriage. The evidence overwhelmingly pointed to conception taking place during defendant's marriage to Bickle. In support of his argument regarding the applicability of MCL 722.1441(3)(c), plaintiff asserted that a possibility existed, albeit a small one, that defendant conceived the child following the granting of her divorce on April 8, 2011. The proffered evidence, however, made the likelihood of this possibility extremely remote. Both defendant's obstetrician and plaintiff's expert, a physician and fertility specialist, concurred that the most likely time of conception was between March 27, 2011, and April 3, 2011. Indeed, plaintiff's own expert indicated that the chances were "95 to 97 percent" that conception occurred during that pre-divorce-judgment timeframe. Defendant's obstetrician opined that the potential for conception to have occurred after April 8, 2011, was in the range of "less than 1 percent." Plaintiff's expert expressed that the chances that defendant conceived on or after April 8, 2011, was "1 to 2 percent."[3]

Additionally, there was testimony indicating that defendant used an over-the-counter pregnancy test on either April 11, 2011, or April 13, 2011, which revealed a positive result. And both defendant's obstetrician and plaintiff's expert stated that such tests, while useful and accurate, would not register, on either of the dates identified for the test, a conception that occurred between April 8 and April 10, 2011.

On this issue, defendant also presents a judicial estoppel argument. In the first appeal, plaintiff emphatically took the position that defendant was pregnant and that the child had been conceived prior to the finalization of the divorce.[4] And plaintiff conceded at the evidentiary hearing in the present case that he had taken such a position in the first action. An argument could be made that plaintiff is judicially estopped from taking a position here that is wholly inconsistent with his unequivocal position in the prior case that defendant was pregnant before the divorce was finalized. See *Wells Fargo Bank, NA v Null*, 304 Mich App 508, 537; 847 NW2d 657 (2014) (discussing features of judicial estoppel). Then again, defendant's own position in the present case on the conception-timing issue is at odds with her stance in the previous case. We decline to take into consideration the doctrine of judicial estoppel.

---

[3] We note that there is no dispute that the child was born premature.

[4] The first panel, while not specifically deciding the issue, apparently leaned toward agreeing with plaintiff's view that conception had occurred during the marriage given its comment, after acknowledging a factual dispute on the matter, that "mutual friends of the couple and members of both their families assert[ed] that within days of the divorce, defendant and plaintiff were sharing the news that they were expecting a child." *Sprenger*, 302 Mich App at 402.

On the basis of the testimony alone, plaintiff's argument under MCL 722.1441(3)(c) fails, as there was effectively no supporting evidence. The trial court did not commit error in rejecting plaintiff's claim under subsection (3)(c).[5]

Plaintiff next contends that the trial court erred in sustaining an objection by defendant with respect to plaintiff's attempt to elicit a response from defendant as to whether Adam Bickle was the biological father of the child. Plaintiff contends that the question was relevant in regards to establishing, as required by MCL 722.1441(3)(a)(*ii*), that "[t]he presumed father, the alleged father, and the child's mother at some time mutually and openly acknowledged a biological relationship between the alleged father and the child." Given our holding that plaintiff failed to establish MCL 722.1441(3)(a)(*i*) as to knowledge of whether defendant was married at the time of conception, and considering that subsections (3)(a)(*i*) through (*iv*) all had to be established to obtain standing, any error in excluding the testimony was entirely harmless. MCR 2.613(A).

Finally, we disagree with defendant on her cross-appeal that the trial court erred in failing to award her attorney fees and costs as sanctions under MCR 2.114. With respect to a request for sanctions under MCR 2.114, we review for an abuse of discretion the trial court's ruling on the request. *Edge v Edge*, 299 Mich App 121, 127; 829 NW2d 276 (2012). However, the court's underlying factual findings, including a finding of frivolousness, are reviewed for clear error. *Kitchen v Kitchen*, 465 Mich 654, 661; 641 NW2d 245 (2002); *Edge*, 299 Mich App at 127. Issues regarding the interpretation of MCR 2.114 are reviewed de novo on appeal. *Id.*

---

[5] We note that the trial court concluded that plaintiff had not presented clear and convincing evidence in support of his positions, which standard defendant maintains reflects the proper burden of proof. Defendant, and evidently the trial court, relied on MCL 722.1445, which provides that "[i]f an action is brought by an alleged father who proves by clear and convincing evidence that he is the child's father, the court may make a determination of paternity and enter an order of filiation[]." However, this burden of proof appears to only concern the actual establishment of paternity, without speaking to the underlying prerequisite of standing as governed by MCL 722.1441. MCL 722.1441 does not set forth any standard regarding the burden of proof. In *Parks*, 304 Mich App at 239-240, this Court, in determining whether the RPA mandated an evidentiary hearing or whether it was discretionary where the RPA did not even mention the word "hearing," made an analogy to the process involved in addressing a motion to change custody and the threshold issue of proper cause or change of circumstances, wherein an evidentiary hearing is only necessary when contested factual issues exist that must be resolved to make an informed decision. In the child custody context relative to the threshold issue, a preponderance of the evidence standard applies. *Vodvarka v Grasmeyer*, 259 Mich App 499, 509; 675 NW2d 847 (2003). Ultimately, we need not decide the proper burden of proof for purposes of MCL 722.1441, given that plaintiff's claims under MCL 722.1441(3)(a) and (c) were not supported by clear and convincing evidence, nor a preponderance of the evidence. Rather, the evidence overwhelmingly supported defendant's positions.

MCR 2.114 concerns the execution of court documents and applies to all pleadings, motions, affidavits, and other papers mandated by the court rules. MCR 2.114(A). The court rule provides in pertinent part:

> (D) The signature of an attorney or party, whether or not the party is represented by an attorney, constitutes a certification by the signer that
>
> (1) he or she has read the document;
>
> (2) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and
>
> (3) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
>
>
> (E) If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages. [[6].]

We decline to reverse the trial court's ruling that denied defendant's request for sanctions. The RPA is newer legislation that has not yet been subjected to much construction by the appellate courts, and, as a matter of first impression, our published opinion today sets forth an interpretation of the RPA as applied to unique facts in which conception fell extremely close to the date of divorce. Although we reject plaintiff's legal position, we are not prepared to conclude that the complaint was unwarranted by *existing* law, nor that the complaint was interposed for an improper purpose, such as to harass defendant, cause unnecessary delay, or to needlessly increase litigation costs. MCR 2.114(D); *Kitchen*, 465 Mich at 663 ("Not every error

---

[6] The question whether a claim is frivolous is evaluated at the time the claim was raised. *In re Costs & Attorney Fees*, 250 Mich App 89, 94; 645 NW2d 697 (2002). The objective of sanctions "is to deter parties and attorneys from filing documents or asserting claims and defenses that have not been sufficiently investigated and researched or that are intended to serve an improper purpose." *FMB-First Mich Bank v Bailey*, 232 Mich App 711, 723; 591 NW2d 676 (1998). Sanction provisions should not be construed in a manner that has a chilling effect on advocacy, that prevents a party from bringing a difficult case, or that penalizes a party whose claim initially appears viable but later becomes unpersuasive. *Louya v William Beaumont Hosp*, 190 Mich App 151, 163; 475 NW2d 434 (1991).

in legal analysis constitutes a frivolous position" and "merely because this Court concludes that a legal position asserted by a party should be rejected does not mean that the party was acting frivolously in advocating its position[,]" especially in regard to legal issues that are complex and not easily resolved.). Rather than filing the complaint for an improper purpose, plaintiff appears to have been solely motivated by a desire to attain the rights of a parent, as alleged. Accordingly, we affirm the trial court's denial of sanctions.

Affirmed. Neither party having fully prevailed on appeal, we decline to award taxable costs under MCR 7.219.


/s/ William B. Murphy
/s/ David H. Sawyer
/s/ Michael J. Kelly

-8-