# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* ESTATE OF ROBERT BERRY BULLOCK.

---

GWENDOLYN MOORE, Co-Personal
Representative of the ESTATE OF ROBERT
BERRY BULLOCK,

UNPUBLISHED
August 21, 2018

Plaintiff-Appellant,

v

Nos. 338635; 339781
Wayne Probate Court

JPMORGAN CHASE BANK, N.A., also known as
JPMORGAN CHASE & CO.,

LC No. 2017-824534-CZ

Defendant-Appellee.

---

Before: SWARTZLE, P.J., and CAVANAGH and M. J. KELLY, JJ.

PER CURIAM.

In Docket No. 338635, plaintiff, a co-personal representative of the Estate of Robert Berry Bullock, appeals as of right the probate court's order granting summary disposition in favor of defendant. In Docket No. 339781, plaintiff appeals as of right the probate court's order granting defendant's petition for attorney fees and costs. We affirm the order of summary disposition, but reverse the grant of attorney fees and costs.

## I. BACKGROUND

These appeals result from plaintiff's action for a declaratory judgment and an accounting related to the terms of the Esther Gordy Edwards Trust Agreement (Edwards Trust). The Edwards Trust was created on September 16, 1982, for the benefit of Esther Gordy Edwards during her lifetime and then, upon her death, for the benefit of her son, Robert Berry Bullock, and his daughters, Robin Terry, Elesha Bridgers (formerly known as Elesha Cherry), and plaintiff (formerly known as Gwendolyn Wimberly). Defendant is the successor co-trustee of the Edwards Trust.

Plaintiff disagreed with defendant's interpretation of the terms of the Edwards Trust and argued that certain funds were required to be paid over to the intestate estate of Robert Bullock (Bullock's Estate), rather than be distributed under the terms of the Edwards Trust. Defendant

-1-

responded that it properly applied the terms of the Edwards Trust, and further asserted that plaintiff lacked standing to challenge the distributions and that her claims were barred by res judicata, payment, and release. The probate court agreed with defendant and granted summary disposition in its favor based on plaintiff's lack of standing, res judicata, and payment. The probate court also subsequently awarded attorney fees and costs to defendant based on its finding that plaintiff's action was frivolous.

## II. ANALYSIS

### A. DOCKET NO. 338635

In Docket No. 338635, plaintiff challenges the probate court's rulings on defendant's motion for summary disposition under MCR 2.116(C)(5). We review de novo the probate court's ruling on a motion for summary disposition under MCR 2.116(C)(5). *Franklin Historic Dist Study Comm v Village of Franklin*, 241 Mich App 184, 187; 614 NW2d 703 (2000). "The pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties must be considered by the court when ruling on the motion. This Court must review the record to determine whether the moving party is entitled to judgment as a matter of law." *Id*. (internal citations omitted).

*Standing*. Plaintiff argues that the probate court erred by ruling that she lacked standing to bring her claims. We review de novo whether a party has standing to bring an action. *Id*. When a specific cause of action is not provided for by law, a litigant generally has standing "if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large." *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010).

In this case, whether plaintiff has standing depends on the interpretation of the Edwards Trust. If the funds at issue were properly distributed through the Edwards Trust, then Bullock's Estate has no interest in those funds and plaintiff lacks standing to bring her claims. If, however, the funds at issue should have been distributed through the laws of intestate succession, then plaintiff has standing to pursue her claims because Bullock's Estate has a substantial interest in those funds.

"We review de novo the proper interpretation of a trust." *In re Stan Estate*, 301 Mich App 435, 442; 839 NW2d 498 (2013). "When interpreting a trust, the probate court's objective is to ascertain and give effect to the intent of the settlor." *Id*. "The intent of the settlor is to be carried out as nearly as possible." *Id*. In so doing, we "look to the words of the trust itself." *In re Perry Trust*, 299 Mich App 525, 530; 831 NW2d 251 (2013).

The fourth and fifth sentences of Section 2A(3) of the Edwards Trust provide:

If there are any assets remaining from the Balance of the Initial Trust after the distributions described in the first, second and third sentences of this Section 2A(3), *the Trustee shall distribute* such assets in equal shares as follows: *seven equal shares to be held and distributed as a separate trust, designated as an Issue Trust, for the benefit of the Settlor's son, ROBERT B. BULLOCK if he is then surviving*, eight shares to be held and distributed as provided in Section 2A(4) if

any of the Settlor's granddaughters, ROBIN TERRY, ELESHA CHERRY, or GWENDOLYN WIMBERLY or any of their issue are then surviving, and five shares to be distributed to the ESTHER GORDY EDWARDS FOUNDATION (known as of the date of this Amended and Restated Trust Agreement as the GORDY FOUNDATION, INCORPORATED). The Trustee shall hold and administer each Issue Trust as provided in Section 3B. [Emphasis added.]

It is undisputed that there were assets remaining from the Initial Trust after the distributions were made in the first, second, and third sentences of Section 2A(3) and, therefore, the fourth sentence of Section 2A(3) applied. The fourth sentence sets forth three conditional distributions to dispose of the remaining assets. At issue is the distribution of seven equal shares for the benefit of Bullock. Under the fourth sentence of Section 2A(3), such shares are to be "held and distributed as a separate trust, designated as an Issue Trust," for the benefit of Bullock, "*if* he is then surviving." (Emphasis added).

The unambiguous language of the fourth sentence of Section 2A(3) means that the distribution of seven equal shares for the benefit of Bullock could only be made if he was surviving at the time the distribution was to be made. Contrary to plaintiff's assertion, it does not mean that Bullock was entitled to the distribution if he survived the settlor. The fourth sentence differs from the first sentence of Section 2A(3), which provides,"If the Settlor's son, ROBERT B. BULLOCK, survives the Settlor, the Trustee shall hold and distribute" a fraction of the remaining assets of the initial trust into an "Issue Trust, for the benefit of the Settlor's son." Notably the first sentence uses the language "[i]f the Settlor's son . . .survives the Settlor," as opposed to the fourth sentence's use of "if he is then surviving." The import of this small, but crucial wording difference indicates that the first sentence only required that Bullock survive the settlor in order to receive the distribution under the first sentence, whereas, the fourth sentence required that Bullock still be living when the remaining assets were distributed to receive a distribution under the fourth sentence.

Neither party disputes the probate court's finding that the distribution occurred after Bullock's death. The question is whether this distribution was proper. The anti-lapse statute, MCL 700.2714(1)(a), provides: "If a beneficiary of a future interest under the terms of a trust fails to survive the distribution date" and "if the future interest is not in the form of a class gift and the deceased beneficiary leaves surviving descendants, a substitute gift is created in the beneficiary's surviving descendants." Plaintiff argues that, under this anti-lapse statute, the assets should have been distributed to Bullock's surviving descendants. Defendant argues, and the probate court found, however, that the Lapsed Distribution provision of the Edwards Trust applied. This provision, recorded in Section 10B(2), provides: "A provision for distribution to an individual who is not surviving at the time such individual otherwise becomes eligible for such distribution shall lapse notwithstanding any law to the contrary." If the distribution lapsed, then the assets would remain to be distributed by the Edwards Trust and Bullock's Estate would have no interest in those assets. Plaintiff claims that the issue of whether the distribution lapsed is not before this Court because defendant did not file a cross-appeal raising this issue. This issue, however, is essential to the question of whether plaintiff has standing and will therefore be considered by this Court on appeal.

According to plaintiff, Section 10B(2) does not apply because Bullock was surviving when he became eligible for the distribution upon the death of the settlor. Under the fourth sentence of Section 2A(3), however, Bullock could only become eligible for the distribution of seven equal shares if he was surviving when the distribution was to be made. Because he was not surviving when the distribution was to be made, he was not surviving when he was otherwise eligible for the distribution. Accordingly, the distribution lapsed. Because the distribution lapsed, Bullock's Estate had no interest in those assets and the probate court properly determined that plaintiff lacked standing to bring the claims. Because plaintiff's lack of standing is sufficient to affirm the trial court's grant of summary disposition, we need not reach any other arguments made by the parties concerning the distribution of trust assets.

## B. DOCKET NO. 339781

In Docket No. 339781, plaintiff challenges the probate court's award of attorney fees and costs. Defendant challenges this Court's jurisdiction over the appeal in Docket No. 339781, but its challenge is without merit. This Court has jurisdiction over the appeal under MCR 5.801(A)(1), which identifies as appealable by right to this Court "a final order, as defined in MCR 7.202(6)(a), affecting the rights or interest of a party to a civil action commenced in the probate court," and under MCR 7.202(6)(a)(iv), which defines a final order as "a postjudgment order awarding or denying attorney fees and costs." Additionally, MCR 5.801(A)(2)(x) provides for an appeal by right from "a final order affecting the rights or interests of an interested person in a proceeding involving a decedent estate," including an order "allowing or disallowing an account, *fees*, or administration expenses." (Emphasis added).

This Court reviews for an abuse of discretion the probate court's award of attorney fees and costs as a litigation sanction. *Sprenger v Bickle*, 307 Mich App 411, 422-423; 861 NW2d 52 (2014). The probate "court's underlying factual findings, including a finding of frivolousness, are reviewed for clear error." *Id.* at 423. "A decision is clearly erroneous when, although there may be evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *Guerrero v Smith*, 280 Mich App 647, 677; 761 NW2d 723 (2008). We review de novo questions of law. *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008).

*Plaintiff's Claim Was Not Devoid of Arguable Legal Merit.* Plaintiff first argues that the probate court clearly erred by finding that plaintiff's claims were frivolous and abused its discretion by ordering plaintiff to pay defendant's attorney fees and costs incurred in defending the action. MCR 2.114(F), MCR 2.625(A)(2), and MCL 600.2591 provide for an award of attorney fees and costs as a sanction for filing a frivolous action. Relevant to the instant appeal, an action is frivolous when the "party's legal position was devoid of arguable legal merit." MCL 600.2591.

The probate court found that plaintiff's action was frivolous because, in part, she had no reasonable basis to believe that she had standing. Although we conclude that the Lapsed Distribution provision of the Edwards Trust applies, preventing the distribution intended for Bullock from lapsing to Bullock's heirs, we conclude that plaintiff has presented a colorable legal argument that the Lapsed Distribution provision does not apply. Indeed, viewed in isolation, the general meaning of the operative language of the fourth sentence of Section

-4-

2A(3)—"if he is then surviving"—would seem to refer to Bullock's death in relation to the settlor. If that were the case, plaintiff may very well have standing to pursue her claim. As explained, we reject plaintiff's interpretation based on a reading of the entire trust document. Yet, that we have concluded that another reading prevails in this case by interpreting the language used in the fourth sentence of the section to the similarly worded language in the first sentence of the section, does not render plaintiff's claim devoid of arguable legal merit. Based upon our review of plaintiff's arguments, we find that the probate court abused its discretion by awarding attorney fees and costs as a sanction for frivolity.

In re Hammond Estate *Does Not Provide an Independent Basis to Assess Attorney Fees and Costs*. Plaintiff also argues that the trial court erred by ruling that defendant was entitled to attorney fees under *In re Hammond Estate*, 215 Mich App 379; 547 NW2d 36 (1996). Before the probate court, defendant argued that this Court's opinion in *Hammond* provides an independent basis to impose sanctions, without regard to whether the lawsuit is frivolous. On appeal, plaintiff argues that the probate court adopted defendant's reading of *Hammond* when assessing attorney fees and costs. We disagree with plaintiff's characterization of the probate court's ruling.

While defendant argued below that attorney fees could be apportioned against plaintiff's distributive share under *Hammond* without a finding of frivolousness, the probate court did not adopt defendant's argument. Rather, it found that attorney fees were proper because plaintiff's case was frivolous and utilized our holding in *Hammond* as support for its decision to apportion those fees against plaintiff's share of the estate. In doing so, the probate court properly interpreted *Hammond* not as setting forth an independent basis to impose sanctions, but as setting forth an authority to impose sanctions against a petitioning beneficiary *after* a proper finding that attorney fees were otherwise justified under a court rule or other established authority. See *Hammond*, 215 Mich App at 387-388. In this manner, the *Hammond* court determined that, when the petitioning party has committed a sanctionable offense, the proper course of action is to assess that sanction against only the petitioning beneficiary. *Id*. Thus, we agree with plaintiff that attorney fees cannot be apportioned under *Hammond* without first finding that attorney fees are independently authorized by statute, court rule, or the common law. Accordingly, we reverse the probate court's order granting defendant attorney fees and costs.

III. CONCLUSION

In Docket No. 336835, we affirm the order granting defendant summary disposition. In Docket No. 339781, we reverse the order granting defendant attorney fees and costs.

/s/ Brock A. Swartzle
/s/ Mark J. Cavanagh
/s/ Michael J. Kelly

-5-