*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

OAK VALLEY ESTATES HOMEOWNERS
ASSOCIATION,

UNPUBLISHED
January 22, 2019

Plaintiff-Appellee,

v

No. 338292
Oakland Circuit Court
LC No. 2015-150570-CZ

GEORGETTA LIVINGSTONE,

Defendant-Appellant.

Before: LETICA, P.J., and CAVANAGH and METER, JJ.

PER CURIAM.

In this action brought under the Condominium Act, MCL 559.101 *et seq.*, defendant appeals as of right a judgment in the amount of $30,538.31 in favor of plaintiff. We affirm the trial court's findings and conclusions concerning plaintiff's entitlement to attorney fees, costs, and fines, but remand for the ministerial task of amending the judgment to reflect attorney fees in an amount consistent with the trial court's factual findings.

## I. BACKGROUND

Defendant resides in a condominium in Clarkston, Michigan, at which a "smart meter" was installed by DTE Energy in approximately 2011. Shortly after installation of the new meter, defendant began experiencing negative health symptoms that she attributed to exposure to electromagnetic radiation emitting from the smart meter. After engaging in a prolonged disagreement with DTE about the effects of the meter, defendant eventually replaced the smart meter with a traditional analog meter, resulting in termination of the electrical services to her property. In order to deliver energy to her home, defendant installed solar panels, a wind turbine, and a generator.

After installation of some, but not all, of the alternative energy sources, plaintiff's president, James Carlton, spoke with defendant about her difficulties with DTE and advised her that the external improvements to her property required approval by plaintiff's board of directors. According to Carlton, in November 2014, plaintiff began receiving complaints from other residents about the noise caused by defendant's generator. Accordingly, plaintiff began sending

defendant periodic written notices indicating that the unauthorized improvements violated plaintiff's bylaws and would result in fines.

In December 2015, plaintiff initiated this action to enforce its bylaws, seeking injunctive relief requiring removal of the wind turbine and generator. The trial court granted summary disposition in plaintiff's favor as to this issue, and this ruling is not within the scope of our review.[1] The only issue properly before this Court is whether the trial court erred by subsequently granting plaintiff's motion for attorney fees, costs, and fines and entering a judgment against defendant in the amount of $30,538.31.

## II. STANDARD OF REVIEW

We review a trial court's decision to grant attorney fees and costs for an abuse of discretion, which occurs "when the trial court's decision is outside the range of reasonable and principled outcomes." *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 551-552; 886 NW2d 113 (2016). The trial court's factual findings supporting its decision are reviewed for clear error. *Sprenger v Bickle*, 307 Mich App 411, 423; 861 NW2d 52 (2014). "A finding is clearly erroneous if, after a review of the record, this Court is left with a definite and firm conviction that a mistake was made." *Fette v Peters Constr Co*, 310 Mich App 535, 549; 871 NW2d 877 (2015). To the extent that this issue requires interpretation of plaintiff's bylaws, contract interpretation is an issue of law that this Court reviews de novo. See *Tuscany Grove Ass'n v Peraino*, 311 Mich App 389, 393; 875 NW2d 234 (2015).

## III. ATTORNEY FEES

In an action arising from an alleged default by a condominium co-owner, a successful association of co-owners "shall recover the costs and reasonable attorney fees associated with the action, 'as determined by the court, to the extent the condominium documents expressly so provide.' " *Windemere Commons I Ass'n v O'Brien*, 269 Mich App 681, 683; 713 NW2d 814 (2006), quoting MCL 559.206(b). Here, Article XIX, § 2 of plaintiff's bylaws similarly states, "In any proceeding arising because of an alleged default by any Co-owner, the Association, if successful, shall be entitled to recover the costs of the proceeding and such reasonable attorney's fees as may be determined by the court . . . ." Thus, under both MCL 559.206(b) and the terms of the bylaws, plaintiff was entitled to recover reasonable attorney fees. As she did below, defendant argues on appeal that plaintiff's request for attorney fees was unreasonable and based upon inflated billing rates and erroneous, improper, and duplicative billing entries. We disagree.

---

[1] Defendant challenged the trial court's ruling concerning plaintiff's motion for summary disposition in her brief on appeal, but this portion of her appeal was previously dismissed by order of this Court for lack of jurisdiction. See *Oak Valley Estates Homeowners Ass'n v Livingstone*, unpublished order of the Court of Appeals, entered May 16, 2017 (Docket No. 338292). Accordingly, we will not address the merits of the parties' positions regarding this issue.

"The party claiming entitlement to costs and fees has the burden of proving that the amount requested is reasonable." *Windemere Commons I Ass'n*, 269 Mich App at 683. The prevailing standard for evaluating the reasonableness of attorney fees is set forth in *Smith v Khouri*, 481 Mich 519; 751 NW2d 472 (2008). See, e.g., *Colbentz v Novi*, 485 Mich 961 (2009) (remanding for redetermination of reasonable attorney fees awarded in Freedom of Information Act, MCL 15.231 *et seq.*, proceeding using *Smith* framework); *Cassidy v Cassidy*, 318 Mich App 463, 489-490; 899 NW2d 65 (2017) (applying *Smith* framework to attorney fees awarded in divorce action); *Ford Motor Co v Dep't of Treasury*, 313 Mich App 572, 589-591; 884 NW2d 587 (2015) (applying *Smith* to attorney fees awarded as sanction for asserting a frivolous defense). Under the *Smith* framework,

> courts begin by determining the fee customarily charged in the locality for similar legal services. To determine this amount, courts should use "reliable surveys or other credible evidence of the legal market." Then, the reasonable hourly rate should be multiplied by the number of hours that were reasonably expended to reach a baseline figure for a reasonable attorney fee. Courts should make adjustments to the figure using the factors from MRPC 1.5(a) and *Wood v Detroit Auto Inter-Ins Exch*, 413 Mich 573; 321 NW2d 653 (1982). [*Ford Motor Co*, 313 Mich App at 590-591 (citations omitted).]

The factors considered in MRPC 1.5(a) are largely duplicative of those identified in *Wood*, 413 Mich at 588,[2] and include:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent. [*Smith*, 481 Mich at 529-530 (opinion by TAYLOR, C.J.), quoting MRPC 1.5(a).]

---

[2] The only factor identified in *Wood* that is not encompassed by MRPC 1.5(a) is "the expenses incurred" in the representation. Compare *Wood*, 413 Mich at 588, with MRPC 1.5(a).

As it was required to do under *Smith*, the trial court began by determining an appropriate hourly rate for plaintiff's attorneys. See *Ford Motor Co*, 313 Mich App at 591-591. Attorney Gregory Need averred that he has been practicing law for over 30 years and has substantial experience in litigating cases involving zoning and land use, as well as enforcement of condominium restrictions. The pleadings in this case indicate that attorney Need's law office is located in Bloomfield Hills, Michigan. According to the 2014 Economics of Law Practice report, the median and mean hourly income for an attorney with 31 to 35 years of experience is $250 and $276, respectively; $250 and $280 for an attorney practicing in Oakland County, south of M-59; and $250 and $257 for an attorney specializing in real estate. Based on these statistics, the trial court did not clearly err by finding that an hourly rate of $250 was reasonable for attorney Need.

Likewise, we do not find clear error with respect to the trial court's determination that attorney Salam Elia's services should be awarded at a reasonable hourly rate of $150. The record contains little information concerning Elia's credentials, apart from the bare assertion that Elia is an associate and a "skilled and experienced" litigator. In apparent recognition of this deficiency, the trial court reduced Elia's billings to a rate comparable to an attorney with less than a year of experience and well below that of the average associate, without any upward benefit for working in Oakland County or specializing in any particular area of the law.

We reject defendant's complaint regarding the increase in attorney Need's hourly billing rate during the pendency of this case.[3] Any increase in the hourly rate charged by plaintiff's counsel is irrelevant to the issue before us, as the trial court did not base its award of attorney fees on the actual hourly rate charged by plaintiff's counsel. Rather, it correctly ordered payment of attorney fees based on a reasonable hourly rate, similar to the fee customarily charged in the locality for similar legal services. *Id*.

Having determined a reasonably hourly rate, the trial court correctly turned to plaintiff's billing statement to determine the reasonable number of hours expended in the case. *Id*. at 591. Attorneys Need and Elia collectively billed a total of 93.7 hours of work over approximately two years. Despite defendant's characterization of this matter as a simple case, the trial court observed, and we agree, that plaintiff was forced to incur additional fees based upon defendant's conduct. In particular, plaintiff was obligated to respond to a preanswer motion to dismiss which presented arguments that were, at best, difficult to interpret; respond to and seek dismissal of a counterclaim presenting arguments nearly identical to those that had already been rejected by the trial court; and pursue a motion to compel after defendant failed to provide timely discovery responses. Furthermore, the trial court only awarded fees attributable to 66 hours of work. On this record, we are not be left with a definite and firm conviction that the trial court was mistaken in its determination of the number of hours that were reasonably expended by plaintiff's counsel.

---

[3] Contrary to defendant's assertion on appeal, attorney Elia's hourly rate did not increase during this matter. Plaintiff explained below that billing entries reflecting an increased hourly rate for attorney Elia beginning in November 2016 were inadvertent and clarified that it sought the same hourly rate for all services provided by Elia.

Finally, the trial court reached a baseline figure for attorney fees by multiplying the reasonable hourly rate for each attorney by the number of hours they reasonably expended. However, the trial court calculated this figure at $16,500 by awarding $15,000 for attorney Need's services (60 hours x $250 per hour) and $1,500 for attorney Elia's services (10 hours x $150 per hour). In doing so, its calculations were inconsistent with its early factual findings. That is, the trial court found that attorney Elia reasonably expended six hours of work in this matter, but it awarded attorney fees for her services based upon 10 hours of work.

After calculating the baseline figure of attorney fees following the procedures outlined in *Smith*, the trial court considered the *Wood* and MRPC factors and found that no adjustments were warranted. Again, the trial court followed the correct analytical framework, see *id*., and defendant has not presented any persuasive arguments to support an upward or downward adjustment in this case. Accordingly, we affirm the trial court's findings and conclusions concerning plaintiff's entitlement to attorney fees, but remand this matter for the ministerial task of amending the judgment to reflect attorney fees in an amount consistent with the trial court's factual findings.[4]

## IV. FINES

In addition to an award of attorney fees, the Condominium Act also provides for relief in the form of "[s]uch other reasonable remedies the condominium documents may provide including but without limitation the levying of fines against co-owners after notice and hearing thereon . . . as provided in the condominium bylaws or rules and regulations of the condominium." MCL 559.206(c). Article XIX, § 4 of the bylaws provides that "violation of any of the provisions of the Condominium Documents shall be grounds for fines by the Association." However, "[n]o fines may be assessed unless in accordance with Article XX." In pertinent part, Article XX provides:

ASSESSMENT OF FINES

Section 1. General. The violation by any Co-owner, occupant or guest of any of the provision of the Condominium Documents shall be grounds for fines against the Co-owner. . . .

Section 2. Procedures. Upon any such violation the following procedures will be followed:

a) Notice. Notice of the violation, including the Condominium Document provision violated, together with a description of the factual nature of the alleged offense shall be sent by first class mail, postage prepaid, to the Co-

---

[4] The total attorney fees awarded should be reduced by $600 (4 hours x $150 per hour). Thus, the April 18, 2017 judgment should be amended to reflect judgment in favor of plaintiff and against defendant in the amount of $29,938.31.

owner or representative at the address shown in the notice files with the Association.

b) Opportunity to Defend. The offending Co-owner shall appear before the Board and offer evidence in defense of the alleged violation. The appearance before the Board shall be at its next scheduled meeting, but in no event shall the Co-owner be required to appear less than 10 days from the date of the notice.

c) Default. Failure to respond to the notice of violation constitutes a default.

d) Hearing and Decision. Upon appearance by the Co-owner before the Board and presentation of evidence of defense, or in the event of the Co-owners default, the Board shall be [sic] by majority vote of a quorum, decide whether a violation has occurred. The Board's decision is final.

Section 3. Amounts. Upon violation of any of the provisions of the Condominium Documents and after default of the offending Co-owner or upon the decision of the Board as recited above, the following fines shall be levied:

a) First violation. Twenty-Five Dollar fine.

b) Second violation. Fifty Dollar fine.

c) Third and Subsequent Violations. One Hundred Dollar Fine.

According to plaintiff, it was entitled to assess fines in excess of $70,000 based upon defendant's continuing violations, but it voluntarily elected to assess fines only with respect to each of the complaints plaintiff received from various co-owners concerning the noise generated by defendant's unauthorized improvements. The trial court agreed that plaintiff was entitled to assess $12,875 in fines and included this amount in the judgment against defendant.

As she did below, defendant challenges these fines on the basis of plaintiff's failure to comply with the procedures outlined in Article XX, § 2 of the bylaws. Defendant argues that plaintiff only offered evidence of 29 notices of alleged violations (rather than a notice for each complaint) and no evidence that she was provided a hearing or other opportunity to defend against the alleged complaints. The trial court rejected defendant's argument, finding that the notice language requires only a recitation of the condominium document provision violated and a description of the factual nature of the alleged offense. We agree.

Nothing in the notice requirements of Article XX, § 2(a) requires plaintiff to issue notices with respect to each continuing violation, so it is irrelevant that plaintiff issued only 29 violation notices to defendant. Plaintiff complied with the requirements of § 2(a) by sending periodic notices to defendant referring to the bylaw provisions at issue—namely, Article VI, § 4, addressing exterior modifications without approval, and Article VI, § 5, addressing "unreasonably noisy activity"—and identifying the improvements that caused the alleged violations.

Turning to defendant's argument concerning § 2(b), this provision afforded defendant an opportunity to "appear before the Board and offer evidence in defense of the alleged violation." Notably, it appears that defendant did not opt to exercise her right to appear before the board at its next scheduled meeting. Instead, she challenged the violation notices through written correspondence on December 30, 2014, and April 2, 2015. Despite this failure to comply with § 2(b), plaintiff nonetheless considered and ultimately rejected defendant's arguments and requests for approval of her improvements. Faced with plaintiff's decision that violations had occurred, defendant took no further action with respect to the dispute.[5] Accordingly, the trial court did not err by finding that assessment of fines was warranted under the bylaws.

Lastly, defendant argues in a cursory manner that the assessment of $12,875 in fines was excessive and unsupported by the evidence. Apart from her assertions regarding plaintiff's noncompliance with the procedures outlined in Article XX, defendant has not attempted to rationalize this argument in any manner or provided citation to relevant authority. Accordingly, defendant effectively abandoned review of this argument. See *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002). In any event, Article XX, § 3 clearly establishes an escalating schedule of fines, with $25 assessed for a first violation, $50 assessed for a second violation, and $100 assessed for each violation thereafter. While defendant's daily violations continued for over two years, plaintiff chose only to enforce its right to assess fines with respect to days on which a co-owner made a complaint concerning the noise attributable to defendant's unauthorized improvements. Carlton provided an affidavit indicating that plaintiff received 130 complaints, resulting in total fines in the amount of $12,875. The trial court did not err by accepting this undisputed evidence and incorporating the assessed fines in its final judgment against defendant.

## V. CONCLUSION

For the foregoing reasons, we affirm the trial court's findings and conclusions concerning plaintiff's entitlement to attorney fees, costs, and fines, but remand for the ministerial task of amending the judgment to reflect attorney fees in an amount consistent with the trial court's factual findings. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Mark J. Cavanagh
/s/ Patrick M. Meter

---

[5] Pursuant to Article III, § 2 of the bylaws, in the absence of a written election and consent to arbitrate the matter, defendant was free to petition the courts for resolution of the dispute. To the extent that defendant was able to establish that she was a "person with disabilities," as defined by MCL 125.1502a(1)(z), and that the modifications to her condominium unit were necessary to alleviate conditions that could be hazardous to her disabilities, defendant was also authorized by statute to bring an action against plaintiff to compel compliance with MCL 559.147a. See MCL 559.147a(4).