*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DUSTIN HANNAH,

        Plaintiff-Appellee/Cross-Appellant,

v

STANLEY RASPOTNIK,

        Defendant/Cross-Appellee,

and

MASON COUNTY ROAD COMMISSION,

        Defendant-Appellant/Cross-Appellee.

UNPUBLISHED
February 2, 2023

No. 358189
Mason Circuit Court
LC No. 2019-000396-NI

Before: PATEL, P.J., and BORRELLO and SHAPIRO, JJ.

PER CURIAM.

Defendant-appellant, the Mason County Road Commission (MCRC), appeals as of right the trial court's order denying its motion for summary disposition under MCR 2.116(C)(7) on the basis of governmental immunity. On cross-appeal, plaintiff challenges the trial court's ruling granting summary disposition in favor of defendant Stanley Raspotnik individually, as well as the trial court's denial of plaintiff's request for sanctions based on an allegedly frivolous motion. For the reasons set forth in this opinion, we affirm the rulings of the trial court.

## I. BACKGROUND

This case stems from a vehicular accident that occurred at approximately 5:00 a.m. on January 29, 2019, at an intersection controlled by a flashing red and flashing yellow light. Raspotnik, who was an MCRC employee, was clearing snow from the road using a grader owned by the MCRC. The grader was approximately 40 feet long and weighed approximately 40,000 pounds. He approached the intersection from the north, traveling south, and stopped for a flashing red light. Raspotnik testified in his deposition that he looked for traffic and did not see any traffic approaching from either direction on the intersecting east-west highway. He then proceeded through the intersection. The intersecting highway was five lanes: two lanes for each direction of

-1-

travel, with a center turn lane. Raspotnik estimated that he reached a speed of approximately 6 miles per hour as he crossed the intersection. Plaintiff was driving a pickup truck with a plow attached to the front, traveling east in the far-right lane of the east-west highway. As he approached the intersection from the west, he had a flashing yellow light. Plaintiff testified that he saw the grader stopped on the north side of the intersection and that the grader drove into the intersection as plaintiff was approximately 50 yards away. Plaintiff's vehicle collided with the right side of the grader driven by Raspotnik.

Raspotnik testified that he was in the intersection first and that he did not see plaintiff's vehicle until it hit the grader, or possibly just before the impact. Raspotnik explained that the grader had a large blind spot on the right side, and he thought plaintiff's vehicle may have been in the grader's blind spot. The blind spot was caused by a switch panel that was approximately 10 inches wide and that extended from the ceiling of the cab to approximately the height of Raspotnik's shoulder when he was operating the vehicle. Raspotnik testified that he knew about the blind spot and "usually always" looked around the blind spot to check for other vehicles when going through intersections. With respect to this specific accident, he testified that he "probably" looked around the blind spot and that "when he hit me I couldn't believe it because I never saw him and I couldn't figure out where he could have possibly come from, but the only explanation would be is if he was behind the control panel." Additionally, there was evidence that it took approximately 13 seconds for the grader to cross the intersection from the point where it was stopped on the north side to the point of impact.

Plaintiff testified in his deposition:

I had a plan to try to miss him, but as he got to the middle of the road and he finally seen me, he sped up, and him speeding up caused me to hit him. I didn't have no time to maneuver like I planned on when I seen him, because obviously he sped up.

According to plaintiff, he was traveling approximately 35 to 45 miles per hour and he did not have any time to avoid the grader. He believed that he braked.

Plaintiff initiated this action against the MCRC and Raspotnik involving claims of negligence and gross negligence. The MCRC moved for summary disposition on multiple grounds. As relevant to this appeal, the MCRC argued that it was entitled to summary disposition under MCR 2.116(C)(7) on the basis of governmental immunity because plaintiff could not establish that the motor vehicle exception[1] applied. The MCRC maintained that there was no genuine issue of material fact that the grader was not operated negligently by Raspotnik because he stopped at the flashing red light and did not see any vehicles approaching the intersection before

---

[1] MCL 691.1405 provides:

Governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner, as defined in Act No. 300 of the Public Acts of 1949, as amended, being sections 257.1 to 257.923 of the Compiled Laws of 1948.

he proceeded through the intersection, and he was almost entirely through the intersection when plaintiff's vehicle struck the grader. The MCRC further argued that plaintiff ignored his duty when faced with a flashing yellow light to proceed with caution and to yield the right of way to a vehicle already in the intersection. According to the MCRC, plaintiff's negligence caused the accident. Thus, the MCRC argued, plaintiff could not successfully rely on the motor vehicle exception to avoid governmental immunity.

Plaintiff argued in opposition that he had the right of way because he had the flashing yellow light and that Raspotnik either did not look or did not see plaintiff's vehicle before entering the intersection with the grader. Plaintiff contended that Raspotnik violated his duty when faced with a flashing red light by entering the intersection when there as an immediate hazard presented by the approach of plaintiff's vehicle. According to plaintiff, he was not comparatively negligent and Raspotnik was entirely at fault for the accident.

The trial court denied the motion for summary disposition involving the motor vehicle exception, reasoning that questions of material fact existed whether the grader was operated negligently. The trial court stated,

> [R]egarding the fact that we're talking about eleven to thirteen seconds, I think that's too close of a call for it to be decided as a matter of law, and I think that that -- that continues as a factual question and for a jury to determine whether-- Yeah, I -- I don't think I can say as a matter of law, in that short span of time, that -- that the grader was actually in the intersection with the other driver at a safe distance to stop, and I would need some expert testimony on that to really look at that and to weigh that from a factual perspective.
>
> So I am going to deny that motion for summary disposition on that claim.

The trial court granted summary disposition in favor of Raspotnik with respect to the individual claims against him, concluding that he was personally immune from liability under MCL 691.1407(2)[2] because there was no evidence that he was grossly negligent.

---

[2] MCL 691.1407(2) provides:

> Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

This appeal followed.

## II. THE MCRC'S APPEAL

On appeal, the MCRC argues that the trial court erred by denying its motion for summary disposition based on governmental immunity.

## A. JURISDICTION

We first must address plaintiff's argument that we lack jurisdiction over the MCRC's appeal. Plaintiff argues that the MCRC's argument that plaintiff's claim does not satisfy the motor vehicle exception to governmental immunity in MCL 691.1405 is actually an argument that plaintiff cannot establish negligence, and an appeal claimed under MCR 7.202(6)(a)(v) is limited to the issue of governmental immunity. Thus, plaintiff contends this Court should dismiss this appeal on jurisdictional grounds.

"Whether this Court has jurisdiction to hear an appeal is always within the scope of this Court's review." *Chen v Wayne State Univ*, 284 Mich App 172, 191; 771 NW2d 820 (2009). Issues regarding jurisdiction, as well as the interpretation of statutes and court rules, are reviewed de novo as questions of law. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

"The jurisdiction of the Court of Appeals is governed by statute and court rule." *Chen*, 284 Mich App at 191. Pursuant to MCR 7.203(A)(1) and MCR 7.202(6)(a)(v), this Court has jurisdiction over an appeal of right filed by an aggrieved party from "an order denying governmental immunity to a governmental party, including a governmental agency, official, or employee under MCR 2.116(C)(7) or an order denying a motion for summary disposition under MCR 2.116(C)(10) based on a claim of governmental immunity." However, an appeal from an order described in MCR 7.202(6)(a)(v), as is true in this case, is "limited to the portion of the order with respect to which there is an appeal of right." MCR 7.203(A)(1).

Here, the trial court denied the MCRC's motion for summary disposition that was based on plaintiff's alleged failure to satisfy the motor vehicle exception to governmental immunity. Under the motor vehicle exception, contained in MCL 691.1405, "Governmental agencies shall be liable for bodily injury and property damage resulting from the *negligent operation* by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner . . . ." (Emphasis added.) Accordingly, this Court has held that when the motor vehicle exception is at issue and a trial court determines that a question of fact exists regarding

---

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

-4-

whether a governmental vehicle was operated negligently such that summary disposition in the governmental agency's favor is prohibited, the effect is to deny the claim of governmental immunity and the order is therefore reviewable on appeal under MCR 7.203(A)(1) and MCR 7.202(6)(a)(v). *Seldon v Suburban Mobility Auth for Regional Transp*, 297 Mich App 427, 436; 824 NW2d 318 (2012). Accordingly, this Court has jurisdiction over the MCRC's appeal in this case. *Id*.; MCR 7.215(J)(1) ("A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule.").

## B. GOVERNMENTAL IMMUNITY

Turning to the merits of the MCRC's appeal, the MCRC argues that the trial court erred by denying its motion for summary disposition under MCR 2.116(C)(7) on the ground of governmental immunity because there was no genuine issue of material fact that the MCRC's vehicle was not operated negligently, and that the accident was caused by plaintiff's failure to adhere to the flashing yellow light, such that the motor vehicle exception therefore did not apply.

## 1. STANDARD OF REVIEW

"This Court reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). With respect to a motion under MCR 2.116(C)(7), this Court has explained:

> MCR 2.116(C)(7) provides that a motion for summary disposition may be raised on the ground that a claim is barred because of immunity granted by law. When reviewing a motion under MCR 2.116(C)(7), this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them. If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact. If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court. However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate. [*Dextrom v Wexford Co*, 287 Mich App 406, 428-429; 789 NW2d 211 (2010) (citations omitted).]

Furthermore, "the applicability of governmental immunity is a question of law that this Court reviews de novo." *Wood v Detroit*, 323 Mich App 416, 419; 917 NW2d 709 (2018) (quotation marks and citation omitted).

## 2. ANALYSIS

A governmental agency is generally "immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function" unless an exception applies. MCL 691.1407(1); see also *Mack v Detroit*, 467 Mich 186, 195; 649 NW2d 47 (2002). Under what is typically referred to as the motor vehicle exception, "[g]overnmental agencies shall

be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner . . . ." MCL 691.1405. This Court has explained that pursuant to MCL 691.1405, a governmental agency is liable "only if plaintiff's injuries resulted from 'the negligent operation' of a motor vehicle" and the governmental agency is otherwise immune from liability. *Seldon*, 297 Mich App at 436.

Hence, the question of governmental immunity turns on whether Raspotnik, an MCRC employee, acted negligently when he drove the MCRC-owned grader through the intersection. The parties agree that the traffic-control light that Raspotnik encountered was a flashing red light, and that plaintiff's light was a flashing yellow light. We thus begin by considering MCL 257.614, which provides as follows:

> (1) If flashing red or yellow signals are used, they shall require obedience by vehicular traffic as follows:
>
> (a) Flashing red (stop signal). When a red lens is illuminated by rapid intermittent flashes, drivers of vehicles shall stop before entering the nearest crosswalk at an intersection or at a limit line when marked and the right to proceed shall be subject to the rules applicable after making a stop at a stop sign.
>
> (b) Flashing yellow (caution signal). When a yellow lens is illuminated with rapid intermittent flashers, drivers of vehicles may proceed through the intersection or past the signal only with caution.
>
> (2) A person who violates this section is responsible for a civil infraction.

As stated in MCL 257.614(1)(a), a driver's right to proceed at an intersection after stopping at a flashing red light is "subject to the rules applicable after making a stop at a stop sign." These rules are contained in MCL 257.649(8), which provides as follows:

> Except when directed to proceed by a police officer, the driver of a vehicle approaching a stop intersection indicated by a stop sign shall stop before entering the crosswalk on the near side of the intersection, or if there is not a crosswalk shall stop at a clearly marked stop line; or if there is not a crosswalk or a clearly marked stop line, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway. *After having stopped, the driver shall yield the right of way to a vehicle that has entered the intersection from another highway or that is approaching so closely on the highway as to constitute an immediate hazard during the time when the driver would be moving across or within the intersection.* [Emphasis added.]

Also relevant to our discussion, the "driver of a vehicle approaching an intersection shall yield the right of way to a vehicle that has entered the intersection from a different highway." MCL 257.649(1).

The MCRC maintains on appeal that there is no genuine issue of material fact that (1) Raspotnik was not negligent and that (2) the accident was instead caused by plaintiff's negligence

in failing to yield the right of way to the grader that was already in the intersection as plaintiff approached the intersection. All of these facts, defendants argue, lead to the inevitable conclusion that plaintiff breached his duty to use caution when approaching the flashing yellow light.

A negligence claim requires proof of four elements: (1) duty, (2) breach, (3), causation, and (4) damages. *Seldon*, 297 Mich App at 433.

Here, as the trial court recognized, the issue is whether Raspotnik decided to enter the intersection even though plaintiff's vehicle was "approaching so closely on the highway as to constitute an immediate hazard during the time when the driver would be moving across or within the intersection." MCL 257.649(8). It is undisputed that Raspotnik stopped at the flashing red light before deciding to proceed, and Raspotnik claimed that he looked both ways and did not see any vehicles approaching on the intersecting highway. Yet, plaintiff's vehicle undisputedly reached the intersection before Raspotnik's grader fully cleared the intersection.

However, when viewing the evidence in a light most favorable to plaintiff as the nonmoving party, *Dextrom*, 287 Mich App 406, 428-429,[3] a reasonable jury could conclude that plaintiff's vehicle was visible to a driver in Raspotnik's position and was close enough to the intersection that it presented an immediate hazard during the time the grader would be within the intersection, such that Raspotnik breached his duty by nonetheless proceeding into the intersection or by failing to see plaintiff's vehicle, MCL 257.649(8).

Accordingly, the MCRC has not demonstrated on appeal that there is no genuine question of material fact whether Raspotnik was negligent in his operation of the grader. *Dextrom*, 287 Mich App at 429; MCL 691.1405. If there exist underlying issues of fact whether the operation of the government-owned motor vehicle was negligent and resulted in injuries to plaintiff, then it is proper for the jury to decide those factual issues regarding negligence bearing both on the application of the motor vehicle exception to governmental immunity and the governmental agency's ultimate liability. *Regan v Washtenaw Co Bd of Co Rd Comm'rs*, 249 Mich App 153, 163 & n 9; 641 NW2d 285 (2002), remanded for reconsideration on other grounds sub nom by *Regan v Washtenaw Co Rd Comm*, 468 Mich 851 (2003).

The MCRC further contends that because the grader is a slow-moving vehicle that took 11 to 13 seconds to reach the point in the intersection where the collision occurred, the grader had obtained the favored right-of-way as a matter of law and it thus became plaintiff's duty to avoid the collision. The arguments presented by the MCRC are best understood as arguments that Raspotnik's driving was reasonable under the circumstances. However, "[o]nce a defendant's legal duty is established, the reasonableness of the defendant's conduct under that standard is generally a question for the jury. The jury must decide whether the defendant breached the legal duty owed to the plaintiff, that the defendant's breach was the proximate cause of the plaintiff's injuries, and thus, that the defendant is negligent." *Riddle v McLouth Steel Products Corp*, 440

---

[3] See also *Moraccini v Sterling Hts*, 296 Mich App 387, 391; 822 NW2d 799 (2012) ("We must consider the documentary evidence in a light most favorable to the nonmoving party for purposes of MCR 2.116(C)(7).").

Mich 85, 96; 485 NW2d 676 (1992) (citation omitted). We further note that given Raspotnik's 21 years of experience driving graders, he would have been generally aware of a grader's speed and acceleration capabilities such that he would be able to take those factors into account when judging whether an approaching vehicle would present an immediate hazard during the time the grader was in the intersection.[4]

As pointed out by plaintiff's counsel during oral argument, the MCRC's focus on the alleged negligence of plaintiff in causing the accident actually implicates issues of comparative negligence rather than demonstrating a lack of negligence on Raspotnik's part. "[B]efore a plaintiff's fault can be compared with that of the defendant, it obviously must first be determined that the defendant was negligent." *Riddle*, 440 Mich at 99 (quotation marks and citation omitted). Our Supreme Court has explained:

> [C]omparative negligence is an affirmative defense. Michigan adopted this standard to promulgate a "fair system of apportionment of damages." Under this doctrine, a defendant may present evidence of a plaintiff's negligence in order to reduce liability. Before the adoption of comparative negligence, a plaintiff was wholly precluded from bringing a negligence action against a defendant if the plaintiff was contributorily negligent. Although the adoption of comparative negligence may have limited a defendant's defenses, the defendant's initial duty has not been altered. [*Id.* at 98 (citation omitted).]

Furthermore,

> Violation of a statute by a plaintiff or a defendant creates a prima facie case from which a jury may draw an inference of negligence. . . . The standards for determining the comparative negligence of a plaintiff are indistinguishable from the standards for determining the negligence of a defendant, and the question of a plaintiff's own negligence for failure to use due care for his own safety is a jury question unless all reasonable minds could not differ or because of some ascertainable public policy consideration. In addition, proximate cause is an issue for the jury, provided that there is evidence from which reasonable persons could draw a fair inference that the injury was caused by negligence. It is for the jury to determine whether a violation of a statute was a proximate cause of the accident. [*Rodriguez v Solar of Mich, Inc*, 191 Mich App 483, 487-488; 478 NW2d 914 (1991) (citations omitted).]

Here, because questions of fact exist regarding Raspotnik's negligence, it would be improper to address at this juncture whether plaintiff was also comparatively negligent. *Riddle*,

---

[4] Raspotnik testified that he thought he was in fourth gear when the crash occurred and that the grader's typical speed in fourth gear was 6 miles per hour. He also testified that the grader had eight gears and a maximum speed of 30 miles per hour.

440 Mich at 99. The MCRC has not shown that the trial court erred in denying its motion for summary disposition. *Maiden*, 461 Mich at 118.

Finally, to the extent the MCRC relies on MCL 257.603[5] to claim that the grader was exempt from certain "rules of the road," we need not decide whether this statute actually applies in this instance because our analysis would not change even if this statute applied. As noted by plaintiff, this Court explained in *Flanagin v Kalkaska Co Rd Comm*, 319 Mich App 633, 638; 904 NW2d 427 (2017), that "the Legislature has expressed its intent [in MCL 257.603] that while drivers are excused from following the 'rules of the road' under certain circumstances, they must do so in a reasonable manner that is mindful of the safety of others on the road." Contrary to the MCRC's apparent argument, MCL 257.603 does not operate as some kind of automatic grant of superior right-of-way rights without accounting for *all* of the underlying circumstances.[6] See *Flanagin*, 319 Mich App at 638-639. As this Court held in *Flanagin*:

> Indeed, it is within the common experience of any driver who has encountered an emergency vehicle on the road: while police cars, ambulances, and fire trucks operating with lights and sirens may proceed through a red light, they may do so only after slowing and ensuring that any cross-traffic has observed them and

---

[5] MCL 257.603 provides in relevant part:

> (3) The driver of an authorized emergency vehicle may do any of the following:
>
> (a) Park or stand, irrespective of this act.
>
> (b) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation.
>
> (c) Exceed the prima facie speed limits so long as he or she does not endanger life or property.
>
> (d) Disregard regulations governing direction of movement or turning in a specified direction.
>
> * * *
>
> (6) The exemptions provided for by this section apply to persons, teams, motor vehicles, and other equipment while actually engaged in work upon the surface of a highway but do not apply to those persons and vehicles when traveling to or from work. The provisions of this chapter governing the size and width of vehicles do not apply to vehicles owned by public highway authorities when the vehicles are proceeding to or from work on public highways.

[6] Although the MCRC seemingly denies that this is the nature of its argument, it is difficult to understand from its briefing how its argument could be anything but an assertion that MCL 257.603 somehow provides an additional shield of immunity.

stopped. The same can be said when those vehicles need to cross the centerline of the road—they must do so only after ensuring that it is, in fact, safe to do so.

The fact that this case involves a plow truck instead of an authorized emergency vehicle does not change the result. While these earlier cases dealt with police vehicles, we hardly think that the Legislature intended to give road work vehicles greater authorization to disregard the rules of the road while engaged in road work than the authorization it granted to emergency vehicles responding to an emergency. That is, if a police officer pursuing a suspect, a fire truck responding to a fire, or an ambulance rushing a critical patient to the hospital is expected to nevertheless give due regard to the safety of others on the road, then certainly so must a plow truck.

In sum, these statutes do not establish a sort of immunity from suit or an excuse to be negligent. Rather, they merely recognize that drivers who are operating a vehicle under the covered circumstances are not violating these particular provisions of the motor vehicle code. The statutes' applicability to a lawsuit arising out of a collision involving one of these vehicles is minimal. It might lead to the conclusion that a plaintiff could not successfully base an argument on negligence per se for a statutory violation (because there would be no violation), but it would not lead to the conclusion that the operator of the emergency or road work vehicle could not be considered negligent simply because the operator was permitted to ignore the ordinary rules of the road under the circumstances.

The real question in this case is whether there is a genuine issue of material fact that the plow truck was being operated negligently. Therefore, this case must be considered in the context of the motor vehicle exception to governmental immunity. [*Id*. at 638-639.]

The above analysis from *Flanagin* applies with equal force to the present case.

### III. PLAINTIFF'S CROSS-APPEAL

### A. JURISDICTION

First, we must address the MCRC's argument that this Court lacks jurisdiction over plaintiff's cross-appeals. The MCRC's argument is without merit. This Court has jurisdiction over plaintiff's cross-appeals because MCR 7.207(A) provides as follows:

(1) When an appeal of right is filed or the court grants leave to appeal any appellee may file a cross appeal.

(2) If there is more than 1 party plaintiff or defendant in a civil action and 1 party appeals, any other party, whether on the same or opposite side as the party first appealing, may file a cross appeal against all or any of the other parties to the case as well as against the party who first appealed. If the cross appeal operates against a party not affected by the first appeal or in a manner different from the first

appeal, that party may file a further cross appeal as if the cross appeal affecting that party had been the first appeal.

## B. GROSS NEGLIGENCE

On cross-appeal, plaintiff first argues that the trial court erred by granting summary disposition in Raspotnik's favor for the claims against him individually based on immunity under MCL 691.1407(2). The sole basis for the trial court's ruling was its conclusion that although there was evidence of ordinary negligence by Raspotnik, there was no evidence that he was grossly negligent.[7]

This Court has explained, "MCL 691.1407(2) sets forth the standard for governmental immunity pertaining to individual actors and employees of governmental agencies." *Seldon*, 297 Mich App at 439-440. MCL 691.1407(2) provides as follows:

> (2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.

> (c) *The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage*. [Emphasis added.]

The term "gross negligence" is defined for purposes of this statute to mean "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). This standard "has been characterized as a willful disregard of safety measures and a singular disregard for substantial risks." *Oliver v Smith*, 290 Mich App 678, 685; 810 NW2d 57 (2010). In *Seldon*, 297 Mich App at 440-441, this Court stated:

> "[E]vidence of ordinary negligence does not create a material question of fact concerning gross negligence." "If reasonable jurors could honestly reach different conclusions regarding whether conduct constitutes gross negligence, the issue is a

---

[7] As previously noted, our standard of review is de novo. *Maiden*, 461 Mich at 118; *Dextrom*, 287 Mich App at 428-429; *Wood*, 323 Mich App at 419.

factual question for the jury. However, if reasonable minds could not differ, the issue may be determined by a motion for summary disposition." [citations omitted; alteration in original.]

Here, plaintiff argues that there was a question of fact regarding whether Raspotnik was grossly negligent because Raspotnik's only offered explanation for not seeing plaintiff's vehicle was Raspotnik's assumption that plaintiff's vehicle must have been in the large blind spot on the right side of the grader and "that explanation itself should have created a question of fact for the jury to decide on the issue of his gross negligence." Plaintiff maintains that a jury could reasonably conclude from the circumstances of the accident that Raspotnik must not have taken sufficient precautions to look around his blind spot to ensure that no vehicles were approaching from his right, despite his admitted awareness of the blind spot and contrary to his usual practice of looking around the blind spot.

It is undisputed that Raspotnik knew of the blind spot and claimed not to have seen plaintiff's vehicle before proceeding into the intersection. Plaintiff's argument relies on two inferences from this evidence: first, that Raspotnik must not have actually looked around the blind spot created by the switch panel and second, that this failure *shows reckless or willful disregard for safety*. This second inference is necessary to show *gross* negligence as opposed to ordinary negligence. See *Maiden*, 461 Mich at 122 ("The plain language of the governmental immunity statute indicates that the Legislature limited employee liability to situations where the contested conduct was substantially more than negligent. Gross negligence is defined by statute as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.") (citation omitted).

However, plaintiff's argument assumes that the nature of the alleged negligence in this case does not occur absent reckless or willful intent and thus essentially resembles an argument based on the doctrine of res ipsa loquitur to presume the existence of gross negligence. "Res ipsa loquitur is the [r]ebuttable presumption or inference that defendant was negligent, which arises upon proof that the instrumentality causing injury was in defendant's exclusive control, and that the accident was one which ordinarily does not happen in absence of negligence." *Woodard v Custer*, 473 Mich 1, 6 n 2; 702 NW2d 522 (2005) (quotation marks and citation omitted; alteration in original). "[R]es ipsa loquitur . . . entitles a plaintiff to a permissible inference of negligence from circumstantial evidence[,]" and the "major purpose of the doctrine of res ipsa loquitur is to create at least an inference of negligence when the plaintiff is unable to prove the actual occurrence of a negligent act . . . ." *Id*. at 6-7 (quotation marks and citation omitted; first alteration and ellipses in original). "While the doctrine of res ipsa loquitur may assist in establishing ordinary negligence, the doctrine is not available where the requisite standard of conduct is gross negligence or wilful and wanton misconduct." *Maiden*, 461 Mich at 127.

While the evidence could support a finding of ordinary negligence, there is no evidence that Raspotnik acted recklessly, demonstrated a substantial lack of concern for substantial risk of injury, or *willfully disregarded* safety measures. Evidence of ordinary negligence is insufficient to establish a material question of fact regarding gross negligence. *Seldon*, 297 Mich App at 440. Here, without more, no reasonable juror could find from this evidence that Raspotnik's conduct amounted to gross negligence. *Seldon*, 297 Mich App at 440-441. Plaintiff thus has failed to demonstrate that the trial court erred by granting summary disposition in favor of Raspotnik

individually. *Id.* "Though the issue whether a governmental employee's conduct constituted gross negligence under MCL 691.1407 is generally a question of fact, a court may grant summary disposition under MCR 2.116(C)(7) if, on the basis of the evidence presented, reasonable minds could not differ . . . ." *Tarlea v Crabtree*, 263 Mich App 80, 88; 687 NW2d 333 (2004) (quotation marks and citation omitted).

## B. SANCTIONS

Next, plaintiff argues that the trial court clearly erred by denying his request for sanctions based on his contention that defendants filed a frivolous motion for summary disposition relying on MCL 500.3135.

## 1. BACKGROUND

In addition to the summary disposition motions discussed above, defendants also filed a motion for summary disposition arguing that the undisputed evidence failed to establish that plaintiff had suffered a threshold injury under MCL 500.3135 that was causally related to the subject accident. Defendants essentially contended that plaintiff's claimed injuries actually related to preexisting degenerative conditions and injuries that predated the subject accident, and defendants asserted that there were "no facts or expert medical opinions which relate his subjective complaints to any physical injury caused by the accident." Defendants claimed that their position was supported by plaintiff's medical records, plaintiff's deposition testimony, and the "independent" medical examinations.

Before defendants filed this summary disposition motion, the trial court had granted defendants' motion for a qualified protective order authorizing defense counsel to "contact and/or meet ex parte (i.e., without plaintiff's counsel present) with healthcare providers of [plaintiff] for purposes of discover and/or trial preparation[.]" The order further provided, "The healthcare providers of [plaintiff] are not required to speak/meet with defense counsel, and if they choose to participate in such a meeting may have their own counsel present if desired[.]"

The order authorizing defense counsel to have ex parte contact with plaintiff's healthcare providers became relevant through plaintiff's response to defendants' summary disposition motion predicated on the threshold injury issue. In opposing this motion for summary disposition, plaintiff attached the affidavit of a neurosurgeon who treated plaintiff, Dr. Rick Edgar. Edgar averred that he had performed two surgical procedures on plaintiff's lumbar spine: one on September 12, 2019, and one on March 23, 2021. Edgar averred that these surgeries were to treat injuries that resulted from the January 29, 2019 motor vehicle accident, and he opined that plaintiff's current lumbar spine pain and disability were caused or exacerbated by the January 29, 2019 accident. He explained that is conclusion was based on his personal observations, as well as his review of plaintiff's medical records and imaging studies. Plaintiff argued that, at a minimum, there were questions of material fact regarding the threshold injury issue.

Furthermore, plaintiff argued that defendants' threshold injury summary disposition motion was frivolous and warranted sanctions under MCR 2.625(A)(2) and MCL 600.2591. Plaintiff argued that "Defense Counsel had a conversation in January of 2021 with Dr. Edgar regarding the injuries [plaintiff] sustained in this matter" pursuant to the trial court's order

authorizing such ex parte conversations, and it "must be assumed" that Edgar told defense counsel during that conversation "the same thing he testified to in his affidavit regarding the injuries Plaintiff sustained in this crash." Plaintiff reasoned that "[h]ad he not, Defendant would have taken his deposition or secured an affidavit from Dr. Edgar stating something different" and that this did not occur.

At the motion hearing, defense counsel conceded that this affidavit created a question of fact regarding plaintiff's alleged lower back injuries, stating as follows:

> But based on that affidavit -- And we did talk to him ex parte, and our notes are -- are -- are different than what's in the affidavit, but maybe his opinion has changed since we talked to him. It's been a while.

> So I -- I'm willing to concede that based on that affidavit, as to the lumbar injuries, the lower-back injuries, the plaintiff would create an issue of fact on the no-fault threshold.

> What that doesn't address are plaintiff's other subjective and -- and what remain to be purely subjective complaints, which are his complaints about headache, migraine, upper-neck pain, cervical back -- cervical neck pain, and shoulder pain. So all of our arguments as to those allegations and whether he crosses the no-fault threshold based on any of those remain valid, which is that there isn't any objective manifestation of it.

> And with -- in the absence of that, what a plaintiff is required to do is come up with some medical testimony to connect those subjective complaints to the actual incident. And we don't have that. We don't have any doctor, similar to Dr. Edgar, who treated him for his lumbar-spine issues. We don't have anybody else saying that any of these other complaints that -- that he's put forth have any objective basis or are related to -- causally related to the accident. And so as to those types of complaints, I think our motion remains valid and should be granted.

> But as to the -- as to the lower -- you know, the lower back, the lumbar back, lumbar-spine issue specifically, I would concede at least for purposes of today that plaintiff has created an issue of fact on the no-fault threshold for that injury only.

Plaintiff maintained at the hearing that the motion was frivolous and that defense counsel should be sanctioned. The trial court denied both the summary disposition motion based on the threshold injury, as well as plaintiff's requests for sanctions. The trial court found that the motion was not frivolous.

## 2. STANDARD OF REVIEW

A trial court's ruling on a request for sanctions is reviewed for an abuse of discretion. *Sprenger v Bickle*, 307 Mich App 411, 422-423; 861 NW2d 52 (2014). A trial court abuses its discretion when its decision "falls outside the range of reasonable and principled outcomes." *Edge v Edge*, 299 Mich App 121, 127; 829 NW2d 276 (2012) (quotation marks and citation omitted). "[T]he court's underlying factual findings, including a finding of frivolousness, are reviewed for

-14-

clear error." *Sprenger*, 307 Mich App at 423; see also *Kitchen v Kitchen*, 465 Mich 654, 661-662; 641 NW2d 245 (2002). "A decision is clearly erroneous where, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Kitchen*, 465 Mich at 661-662.

### 3. ANALYSIS

On appeal, plaintiff argues that the trial court clearly erred by denying his request for sanctions. However, as an initial matter, plaintiff misstates the scope and extent of defense counsel's concession at the hearing. Plaintiff claims that defense counsel conceded at the hearing that "based on the contents of Dr. Edgar's affidavit, defendants could not succeeded [sic] on their summary disposition motion based on §3135's threshold." Defense counsel did not make such an expansive concession, instead only conceding that the affidavit created a question of fact regarding plaintiff's alleged lumbar spine injuries. Defense counsel argued that defendants could still succeed on their motion with respect to the other injuries or impairments alleged by plaintiff.

With that factual clarification in mind, we turn to plaintiff's primary appellate argument. Plaintiff argues that defendant's threshold injury summary disposition motion was "frivolous" and that sanctions should be awarded on that basis. In the trial court, plaintiff relied on MCR 2.625(A)(2) and MCL 600.2591. On appeal, plaintiff additionally cites MCR 1.109(E)(5)(b). Plaintiff specifically argues in his appellate brief that "[i]n this case, the defendants in filing their motion for summary disposition based on §3135's threshold had no reasonable basis to believe the facts underlying that motion were true for purposes of MCL 600.2591(3)(a)(ii), nor was that motion 'well ground in fact' for purposes of MCR 1.109(E)(5)(b). In support of this argument, plaintiff asserts that defendants already knew Edgar's opinions before they filed their summary disposition motion because defense counsel had spoken with Edgar in January 2021, four months before filing the summary disposition motion, and nonetheless "persisted in filing their frivolous motion." Plaintiff reasons:

> There are two conclusions that can be derived from the fact that counsel for defendants spoke by telephone with Dr. Edgar to discuss his treatment of [plaintiff] four months before filing their motion. The most likely is that counsel for defendants specifically inquired of Dr. Edgar during this conversation if the surgeries that he performed on Mr. Hannah were the direct result of the January 29, 2019 accident and Dr. Edgar confirmed that they were. The filing of defendants threshold-based motion must be deemed frivolous in this circumstance.

> The only other possible explanation is that, despite the defendants' specific request to talk to [plaintiff's] treating physicians for the purposes of determining whether the injuries he was claiming were related to the accident, defendants' counsel failed to discuss this issue with Dr. Edgar during the January 2021 telephone call.

> But this scenario should still result in a finding that the defendants' summary disposition motion was frivolous [because it was not based on a reasonable inquiry].

MCL 600.2591 provides in relevant part:

> (1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

> * * *

> (3) As used in this section:

> (a) "Frivolous" means that at least 1 of the following conditions is met:

> (*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

> (*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

> (*iii*) The party's legal position was devoid of arguable legal merit.

MCR 1.109(E)(5)(b) provides that the "signature of a person filing a document, whether or not represented by an attorney, constitutes a certification by the signer that . . . to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law[.]" Under MCR 1.109(E)(6), "If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees[,]" and the "court may not assess punitive damages." Further, MCR 1.109(E)(7) provides that "[i]n addition to sanctions under this rule, a party pleading a frivolous claim or defense is subject to costs as provided in MCR 2.625(A)(2)[,]" and that the "court may not assess punitive damages." MCR 2.625(A)(2) provides: "In an action filed on or after October 1, 1986, if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591."

Plaintiff's appellate argument is substantially similar to the argument raised in the trial court. Here, as in the trial court, the foundation of plaintiff's argument is speculative regarding what "must" have transpired during the conversation between defense counsel and Edgar. Plaintiff ignores that according to Edgar's affidavit, one of the two surgeries was performed in March 2021, after the January 2021 conversation with defense counsel and before defendants filed the motion for summary disposition in May 2021. Edgar's opinions were based in part on his personal observations during this surgery. Defense counsel stated at the motion hearing that Edgar's affidavit differed from counsel's notes from the earlier conversation with Edgar. Plaintiff on appeal seemingly ignores the possibility that Edgar's opinions could have changed or evolved and further ignores that defendants did not wholly abandon their summary disposition motion as a result of Edgar's affidavit. Thus, plaintiff has not convinced us that it was clearly erroneous for

the trial court to find that the motion was not frivolous.  *Kitchen*, 465 Mich at 661-662.  The mere fact that defendants did not prevail, or that they changed course in response to evidence, does not render the motion frivolous.  See *id*. at 662.

Affirmed.  Neither side having prevailed, no costs are awarded.  MCR 7.219.

/s/ Sima G. Patel
/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro