*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* CONSERVATORSHIP OF DPV.

---

VINCENT W. VANPOPPELEN,

      Petitioner,

v

IVY S. VANPOPPELEN,

      Appellant,

and

WYATT R. VANPOPPELEN and JUNE
VANPOPPELEN,

      Other Parties,

and

SHANE CHILDERS, Successor Conservator of
DPV,

      Appellee.

UNPUBLISHED
July 27, 2023

No. 362139
Macomb Probate Court
LC No. 2017-223826-CA

---

Before: GLEICHER, C.J., and JANSEN and HOOD, JJ.

PER CURIAM.

This guardianship/conservatorship matter has been before this Court on three prior occasions. At issue in the current appeal are various probate court orders sanctioning David P. VanPoppelen's immediate family members and caretakers for allegedly raising improper challenges to the guardian/conservator's actions. The probate court also held them in contempt. We are bound by an earlier decision of this Court to affirm a March 1, 2021 sanction order. But the probate court's May 25, 2021, June 3, 2021, and June 21, 2022 orders imposing sanctions and

-1-

holding the family members in contempt are not supported on this record. We affirm the March 1, 2021 order, but reverse the May 25, 2021, June 3, 2021, and June 21, 2022 orders, and remand for return of improperly collected sanctions.

## I. BACKGROUND

In 2017, approximately one year after being diagnosed with early onset dementia, David P. VanPoppelen (DPV) moved in with his ex-wife, June VanPoppelen. DPV granted June a power of attorney and June served as DPV's primary caregiver. DPV's brother Vincent filed a petition to become DPV's guardian and conservator. June and DPV's adult children, Ivy (then 19) and Wyatt (then 26), (collectively the VanPoppelens) filed competing petitions. *In re Guardianship of David P VanPoppelen*, unpublished per curiam opinion of the Court of Appeals, issued December 4, 2018 (Docket Nos. 340224 & 340226) (*VanPoppelen I*), slip op at 2. The probate court invalidated DPV's power of attorney based on incompetence. The probate court denied Ivy and Wyatt's request to be named as coconservators and coguardians based on "their young age" and concern that competing family members would exert control over them. *Id*. at 3. The court appointed a third-party attorney, Martin Brosnan, to serve as DPV's guardian and conservator. *Id*.

We vacated the order appointing Brosnan, explaining that under MCL 700.5313(3)(b) and MCL 700.5409(1)(d), Ivy and Wyatt "were then in the top priority position to serve as [DPV's] guardian and conservator" unless they were found unsuitable or unwilling to serve. *VanPoppelen I*, slip op at 7. On remand, the probate court was ordered to either appoint Ivy and Wyatt or identify facts supporting that they were unable "to suitably provide for their father." *Id*. at 8.

On remand, the probate court expanded its reasoning and again denied Ivy and Wyatt's bid to be named as DPV's coconservators and coguardians. *In re Guardianship of David P VanPoppelen*, unpublished per curiam opinion of the Court of Appeals, issued May 14, 2020 (Docket Nos. 347977 & 347978) (*VanPoppelen II*), slip op at 8. A panel of this Court affirmed that ruling. *Id*. at 8-9. Brosnan continued to serve as the court-appointed guardian and conservator.

While *VanPoppelen II* was pending in this Court, Brosnan requested probate court authorization to seek partition of real property that DPV owned jointly with Vincent in Pentland Township, Luce County. "The property consisted of six contiguous parcels with a total size of 110 acres; the petition sought to divide the 110 acres with [DPV] and Vincent each receiving approximately 55 acres." *In re Guardianship of David P VanPoppelen*, unpublished per curiam opinion of the Court of Appeals, issued February 24, 2022 (Docket Nos. 353319, 353320, & 356664), lv den 510 Mich 864 (2022) (*VanPoppelen III*), slip op at 4. After receiving probate court approval, "Brosnan and Vincent executed quitclaim deeds to divide the property, and the deeds were filed with the Luce County Register of Deeds." *Id*.

The VanPoppelens challenged the accounting Brosnan prepared for the period of August 2018 through August 2019. "Schedule D: Itemized assets remaining at end of accounting period" included "3 parcels of vacant land in Newberry, Michigan" valued at $82,800. No documents related to the property partition were attached. The VanPoppelens raised several objections to the accounting, but did not challenge the property partition at that time, and the probate court allowed the accounting. In early 2020, Brosnan sought to be released from his duties as guardian and conservator, citing a breakdown in his relationship with the VanPoppelens. *Id*.

Brosnan asserted that difficulties with the VanPoppelen family, including the family's objections to the accounting, prevented him from effectively performing his duties. The VanPoppelen family responded by challenging Brosnan's performance as a fiduciary and alleging various inaccuracies in the reporting of [DPV's] assets. The VanPoppelen family requested that the probate court dissolve the guardianship and conservatorship or appoint [Ivy] and Wyatt to those roles. [*Id*.]

The probate court permitted Brosnan to resign and appointed attorney Shane Childers as successor guardian and conservator. Brosnan also filed two accountings covering August 25, 2019 through July 15, 2020, as COVID delays interfered with the transfer of duties. The VanPoppelens challenged those accountings as well. *Id*.

The VanPoppelens subsequently sought restitution from Brosnan. DPV's investment accounts lost $129,456.97 during the COVID market crash. The VanPoppelens contended that Brosnan should have protected DPV's assets long before March 2020 by moving them into safer investments. *Id*. The probate court denied the restitution request, finding that the VanPoppelens lacked standing to seek this relief and that the motion was barred by res judicata and collateral estoppel as the court had already rejected the VanPoppelens' challenges to Brosnan's accountings. In an order dated March 1, 2021, the probate court deemed the motion for restitution frivolous and imposed $2,670 in sanctions on the VanPoppelens. *Id*. at 5.

Three days before the order entered, the VanPoppelens sought relief from an error in the property partition matter.

[T]he VanPoppelen family moved for correction of the 2019 division of the 110 acres located in Pentland Township, after learning that the Pentland Township tax assessor's records listed [DPV] as the owner of only 30 acres instead of the nearly 55 acres he should have received in the partition. The VanPoppelen family believed that Vincent and Brosnan wrongly executed deeds that failed to convey [DPV's] rightful share of the real property. They requested that the probate court issue an order requiring Brosnan to correct the error at his own expense. The VanPoppelen family also moved to terminate the conservatorship and guardianship or, in the alternative, to appoint [Ivy] and Wyatt to these roles.

Childers confirmed to the probate court that the Pentland Township tax assessor's records incorrectly listed Vincent as the owner of 80.36 acres, and [DPV] as the owner of 30 acres, and that the error appeared to be attributable to incomplete tax parcel identification numbers on the two quitclaim deeds that Brosnan and Vincent had executed to divide the 110-acre parcel. After learning of the VanPoppelen family's motion for correction, Childers consulted Brosnan, who assured Childers that the parcels were properly partitioned in accordance with the court's order and provided Affidavits of Scrivener's Error stating that the Tax Parcel Identification numbers on the deeds were incomplete, but the deeds stated the correct property descriptions. Childers informed the probate court that he also had consulted Krystal Bertram, a senior title examiner at Transnation Title Agency, to investigate the legal descriptions in the quitclaim deeds and that Bertram found

-3-

that the deeds accurately conveyed 54.87 acres to [DPV]. Childers also informed the probate court that he had learned that he should apply to the Township for a parcel split or boundary adjustment to correct the tax roll inaccuracies. [*Id*. at 5.]

Childers and Brosnan admitted to the probate court that errors were made. Childers explained that Brosnan had included incomplete tax parcel identification numbers in the deeds. Brosnan admitted that error, but asserted that he otherwise correctly described the property. Childers also advised the court that before the real property could be legally partitioned, Brosnan was required to apply for a parcel split or boundary adjustment, and had not done so.

> The VanPoppelen family rejected Childers's explanation of a scrivener's error; they requested the probate court order a survey of the property and also order Vincent to tender a new quitclaim deed granting [DPV] his rightful share of the 110 acres. Brosnan responded that the VanPoppelen family's motion should be dismissed because the family members lacked standing to bring a motion on [DPV's] behalf, and that the motion was barred by res judicata and collateral estoppel because the land division was previously approved by the probate court. *Brosnan requested that the VanPoppelen family again be ordered to pay sanctions in the amount of $2,670, on the ground that their motion was frivolous.* [*Id*. (emphasis added).]

Accordingly, even though Brosnan had admitted his error and Childers had brought to light an additional error on Brosnan's part, Brosnan claimed that the VanPoppelens' concerns were unjustified and their attempts to correct the errors were frivolous.

> At the hearing on the motion held May 24, 2021, Wyatt informed the probate court that the error was in the quitclaim deed, as well as in the tax assessor's records. Childers acknowledged that although the deeds had the correct description they listed incorrect tax parcel identification numbers, causing the inaccurate tax rolls. The probate court determined that the tax roll discrepancy was a simple error that would be resolved when the tax assessor's records were updated, and further found that the VanPoppelen family lacked standing to bring the motion and that the trial court had previously determined this issue. The probate court allowed the VanPoppelen family the option of paying for a survey to verify that the deeds actually conveyed to [DPV] his full share, but they declined that option. *The probate court also found that the VanPoppelen family's motion was frivolous and by order dated May 25, 2021, again awarded Brosnan attorney fees and costs of $2,670 as a sanction for the frivolous motion.*[1] The probate court also denied the VanPoppelen family's request that the conservatorship and guardianship be dissolved, concluding that the family's frivolous motions demonstrated that the

---

[1] The probate court actually imposed sanctions on three grounds: the VanPoppelens lacked standing, the challenges were barred by collateral estoppel and res judicata, and frivolity.

family lacked the level of sophistication necessary to manage [DPV's] finances. [*Id*. at 5-6 (emphasis added).]

Despite that Childers again noted Brosnan's error, the probate court again determined that the VanPoppelens had filed frivolous pleadings.

> The VanPoppelen family thereafter filed an objection to Childers's first annual accounting, asserting that the Pentland Township tax records now listed Vincent as a co-owner of [DPV's] 55 acres. The probate court overruled the family's objections and deemed them frivolous on grounds of res judicata. *On June 3, 2021, the probate court ordered the VanPoppelen family to pay Childers $175 in attorney fees,* and issued an order allowing Childers's amended first annual account. [*Id*. at 6 (emphases added).]

And despite continued errors on the part of the attorneys, the court again faulted the VanPoppelens for bringing the errors to light.

> In *VanPoppelen III*, another panel of this Court affirmed the probate court order appointing Childers as successor conservator rather than Ivy and Wyatt. Ivy was then 22 and Wyatt 29. Nevertheless, this Court held that the probate court's decision was supported by the record. *Id*. at 9-10. However, this Court determined that the probate court abused its discretion in rejecting the bid of DPV's adult children to be named as their father's guardian. *Id*. at 10. Accordingly, this Court vacated the order naming Childers as guardian and remanded "for reevaluation of [Ivy's] and Wyatt's suitability to serve as [DPV's] guardian or guardians." *Id*. at 11.

This Court determined that challenges to the imposition of sanctions against the VanPoppelens related to attacking the property partition were not properly before us as follows:

> In case no. 356664, [Ivy] contends that the probate court abused its discretion by imposing sanctions against the VanPoppelen family after finding their motion to correct the property records regarding the Pentland Township property to be frivolous. [Ivy's] arguments involve *challenges to the probate court's **May 25, 2021** order denying her motion for Correction of Estate Property Division, and awarding Brosnan $2,670 in costs and attorney fees as a sanction for bringing a frivolous motion,* as well as *challenges to the probate court's **June 3, 2021** order denying [Ivy's] renewed objection to the conservator's financial report and motion for proper execution of the Pentland Township property deeds, and awarding Childers $175 in attorney fees and costs for the frivolous objections.* These issues are not properly before this Court.

> In case no. 356664, [Ivy] claimed an appeal to this Court on March 19, 2021, of the probate court's March 1, 2021 order, which denied [Ivy's] motion for an Order of Restitution of Protected Person's Monetary Loss by Conservator, and awarded Brosnan $2,670 in costs and attorney fees as a sanction for bringing a frivolous motion. The issues [Ivy] raises on appeal, however, relate to the sanctions imposed by the probate court in orders entered May 25, 2021 and June 3, 2021. Although a party who files an appeal of right from a final order may raise issues

related to preceding interlocutory orders in the case, the party may not challenge orders subsequently entered in the lower court. Therefore, *[Ivy's] challenges to the imposition of sanctions arising from the disputed division of the Pentland Township property, the subject of the probate court's* **May 25, 2021** *and* **June 3, 2021** *orders, which were entered after the March 1, 2021 order appealed, are not properly before this Court, and we decline to consider them.* [*Id*. at 10-11 (emphases added; citations omitted).]

This Court expressly affirmed the March 1, 2021 order, which imposed sanctions against the VanPoppelens related to their motion for restitution from Brosnan. *Id*. at 11.

A month after *VanPoppelen III* issued, the VanPoppelens had not paid any of the sanctions arising from the March 1, May 25, or June 3, 2021 orders. Brosnan filed a motion to show cause why the VanPoppelens should not be held in contempt for failing to comply with the March 1, 2021 order. The VanPoppelens replied with a motion requesting increased fees for DPV's care, noting the rise in costs due to the COVID pandemic and the sharp decline in DPV's health that required additional care hours. Consistent with *VanPoppelen III*, the VanPoppelens requested that the probate court appoint Wyatt (then 30) and Ivy (then 23) as DPV's guardians. The probate court never addressed that request despite this Court's direct order to reevaluate the guardianship. The VanPoppelens also sought to set aside the earlier sanction orders, emphasizing that Childers "expended hours and efforts" to remedy the errors in the property partition, supporting the VanPoppelens' claims against Brosnan. They sought reimbursement from Brosnan to DPV for the cost of correcting his errors.

A hearing was conducted on June 21, 2022. In the meantime, Childers withheld $2,670 from the VanPoppelens' payment for DPV's care and remitted it to Brosnan on June 1.

The probate court expressed annoyance at the VanPoppelens for again challenging the accuracy of the property partition. The court insisted that Brosnan had done nothing wrong and that it had explained "multiple times" that the township "just needed an extra step taken." Once that step was taken, the tax records would be corrected. Childers had easily taken that step, the court asserted. Accordingly, the probate court described the VanPoppelens' continued challenges as frivolous. The court held the family members in contempt and ordered them to pay "an additional $510.00 by June 28, 2022 for pursuing a frivolous defense." If the VanPoppelens did not pay the sanctions, the amounts would be deducted from the funds provided to them for DPV's care. The VanPoppelens did not pay and their reimbursements for DPV's care were reduced until his October 2022 death.

## II. ANALYSIS

Ivy appeals the various orders imposing sanctions against the VanPoppelens, as well as the order holding them in contempt. The March 1, 2021 sanction order was affirmed in *VanPoppelen III*. We may not revisit that order. However, we have yet to consider the VanPoppelens' challenges to the other sanction orders issued by the probate court or the contempt ruling, and they may be considered in this appeal.

"We review a probate court's issuance of a contempt order for an abuse of discretion and the factual findings supporting the order for clear error." *In re Moroun*, 295 Mich App 312, 335; 814 NW2d 319 (2012). We also review for an abuse of discretion a lower court's award of sanctions for a frivolous filing. *Sprenger v Bickle*, 307 Mich App 411, 422-423; 861 NW2d 52 (2014). We review for clear error a court's underlying factual findings, "including a finding of frivolousness." *Id*. at 423.

> A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made. To be clearly erroneous, a decision must be more than maybe or probably wrong. Further, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it. [*In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011) (citations omitted).]

Legal issues, "such as the nature of the contempt orders and whether the contempt statute permitted the sanctions imposed," are reviewed de novo. *In re Contempt of Auto Club Ins Ass'n*, 243 Mich App 697, 714; 624 NW2d 443 (2000).

We cannot grant relief in relation to the probate court's March 1, 2021 order, denying the VanPoppelens' motion for restitution arising from the loss of investment funds and awarding Brosnan $2,670 in sanctions connected to that motion. This Court expressly affirmed that order in *VanPoppelen III*, slip op at 11.

> The law of the case doctrine holds that a ruling by an appellate court on a particular issue binds the appellate court and all lower tribunals with respect to that issue. If an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same. [*New Props, Inc v George D Newpower, Jr, Inc*, 282 Mich App 120, 132; 762 NW2d 178 (2009) (cleaned up).]

We are bound by *VanPoppelen III* and may not reconsider issues already decided.

However, we may consider the orders entered on May 25 and June 3, 2021, as well as the court's June 21, 2022 order. Contrary to the probate court's findings, the record supports the VanPoppelens' concerns about the real property partition. Therefore, their actions to ensure that the errors were corrected were not and could not be frivolous. And although the June 21 order purported to hold the VanPoppelens in contempt for failing to abide by the March 1, 2021 order, the probate court chastised them on the record not for bringing a restitution claim (the subject of the March 1 order), but for continuing to challenge the real property partition:

> I'm going to stop you because I am not going to listen to this one more time. I have listened to you make these same ridiculous arguments that Mr. Brosnan did something wrong, and I've explained to you multiple times that he did nothing wrong, that the city, or township, or whatever the place is where the property is, just needed an extra step taken. Which is unusual, but that's up north for you. They needed an extra step taken by something filed with the township that got filed by

Mr. Childers and everything was fine. There, the deed was proper. Everything was proper, except the township making the changes so it was reflected in the tax record. You've been, that's been explained to you multiple times by multiple people and you still keep fighting this, and all it is is frivolous. It's absolutely, 100-percent frivolous.

\* \* \*

I do not sanction people willy nilly. I rarely sanction anyone. But when you keep filing frivolous pleadings and wasting people's time I'm going to sanction you, and I'm going to sanction you again today because this is frivolous.

"[A] court speaks through its written orders and judgments, not through its oral pronouncements." *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009). Accordingly, the probate court ultimately held the VanPoppelens in contempt for failing to comply with the March 1, 2021 order. However, the facts underlying the court's ruling went beyond the failure to comply with the March 1 order; the court also considered the VanPoppelens' continued challenges in relation to the property partition. The probate court clearly erred in finding that the VanPoppelens' challenges to the partition errors were frivolous. Correcting those errors removes the support for the contempt order.

MCL 600.2591(3)(a) defines a "frivolous" action as meeting "at least 1 of the following conditions":

(i) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

(ii) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(iii) The party's legal position was devoid of arguable legal merit.

Sanctions are intended to address (and to deter) egregious and intentional abuses of the judicial process. There was no abuse of the judicial process here on the VanPoppelens' part. Rather, the VanPoppelens fought for several years for the freedom to manage DPV's assets, just as they provided hands-on personal care for their loved one. For years, the family had to fight to ensure DPV's finances were being properly managed while watching DPV's assets being unnecessarily drained by private conservator and guardian fees. And when they raised legitimate concerns that DPV's assets were not properly managed, the court accused the VanPoppelens of harassment and abuse of the judicial system.

It is abundantly clear from the record that the VanPoppelens' intentions were not to harass, embarrass, or injure either Brosnan or Childers. The VanPoppelens naturally and reasonably wanted proper management of their loved one's assets. The probate court stretched and strained for excuses to appoint a private conservator/guardian, unnecessarily diverting fees away from the assets needed for DPV's in-home care. The probate court then expressed shock, annoyance, and anger at DPV's closest family members for monitoring the conservator/guardian's actions and

discovering his errors. The VanPoppelens were motivated to protected their father/ex-husband and continued their efforts despite the probate court's unjustified ire.

It is equally clear that the VanPoppelens' claims were supported by the facts. Brosnan admitted that he erred in drafting the quitclaim deeds by providing incomplete tax parcel identification numbers. The "fix" for this error was also incorrectly performed as Vincent was then listed as a coowner of DPV's share of the property. Childers discovered that Brosnan could not legally effectuate a property partition without a special application, requiring additional work at additional cost by Childers. The repeated errors by the conservators/guardians in this regard gave the VanPoppelens a solidly reasonable basis to believe their challenges were supported.

The probate court also imposed sanctions because it deemed the VanPoppelens' challenges to the real property partition were barred by res judicata and collateral estoppel as the partitioned property was listed as an asset in the 2018-2019 accounting. Although the VanPoppelens objected to that accounting, they did not raise the partition issues at that time. Neither res judicata nor collateral estoppel applies here as both doctrines require the initiation of a second action.

> The doctrine of res judicata is employed to prevent multiple suits litigating the same cause of action. The doctrine bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first. [*Adair v State*, 470 Mich 105, 121; 680 NW2d 386 (2004).]

"Collateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties when the prior proceeding culminated in a valid final judgment and the issue was actually and necessarily determined in that prior proceeding." *Rental Props Owners Ass'n v Kent Co Treasurer*, 308 Mich App 498, 528; 866 NW2d 817 (2014).

The probate court further determined that the VanPoppelens' challenges were frivolous because they lacked standing to raise them. MCR 5.125(C)(27) provides that "[t]he persons interested in a petition by a conservator for instructions or approval of sale of real estate or other assets are" the subject of the conservatorship and "those persons listed in subrule (C)(25) who will be affected by the instructions or the order." MCR 5.125(C)(25)(b) in turn identifies as interested parties "the presumptive heirs of the individual to be protected." Ivy and Wyatt are DPV's presumptive heirs. As such, they had an interest in the real property partition.

> The purpose of the standing doctrine is to assess whether a litigant's interest in the issue is sufficient to ensure sincere and vigorous advocacy. Thus, the standing inquiry focuses on whether a litigant is a proper party to request adjudication of a particular issue and not whether the issue itself is justiciable. [*Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 355; 792 NW2d 686 (2010) (quotation marks and citations omitted).]

In Michigan, one has standing if "one has in an individual or representative capacity some real interest in the cause of action, or a legal or equitable right, title, or interest in the subject matter of the controversy." *Bowie v Arder*, 441 Mich 23, 42-43; 490 NW2d 568 (1992) (quotation marks and citation omitted).

Ivy and Wyatt are DPV's heirs and would inherit the subject property upon DPV's death. June was DPV's caretaker and collected her fees and reimbursement from DPV's assets. Each of the VanPoppelens thereby had a real interest in protecting the value of DPV's property. They had standing to challenge the repeated errors in the Pentland Township property partition.

Accordingly, we reverse the sanction orders entered by the probate court on May 25 and June 3, 2021. Any funds withheld from the VanPoppelens' monthly reimbursement to cover those sanctions must be returned to them.

The reversal of the May 25 and June 3, 2021 sanction orders calls into question the propriety of the contempt order. "Contempt of court is a wilful act, omission, or statement that tends to impair the authority or impede the functioning of a court." *In re Contempt of Robertson*, 209 Mich App 433, 436; 531 NW2d 763 (1995). "Courts have inherent independent authority, as well as statutory authority, to punish a person for contempt." *Id*., citing MCL 600.1701 *et seq*. A court may hold a party in either civil or criminal contempt. "The court's purpose in exercising its contempt powers, to coerce or to punish, not the nature of the contemptuous conduct, defines which of the two contempt powers the court actually uses." *In re Contempt of Auto Club Ins Ass'n (Algarawi v Auto Club Ins Ass'n)*, 243 Mich App 697, 711; 624 NW2d 443 (2000), superseded in part by statute as stated in *Porter v Porter*, 285 Mich App 450, 459; 776 NW2d 377 (2009).

> When a court seeks to compel a contemnor to comply with its order requiring or forbidding some particular act, the court may use the coercive sanctions permitted by civil contempt, including a fine of up to $250, a jail term of no more than thirty days that expires when the contemnor purges the contempt, and compensation to others who sustain losses because of the contemptuous conduct. [*Algarawi*, 243 Mich App at 711-712.]

Civil contempt can be cured with compliance. To hold a party in civil contempt, the party's "contemptuous behavior must persist at the time of the contempt hearing"; otherwise there will be nothing to compel. *Id*. at 712.

"Criminal contempt . . . serves a very different purpose from civil contempt in that it punishes the contemnor for past conduct that affronts the court's dignity." *Id*. at 713. The purpose is punitive rather than to compel compliance. The contempt cannot be cured and therefore does not evaporate when the party follows the court's directives. *Id*.

Here, Childers had already remitted to Brosnan the funds required by the March 1 order. The probate court could not order the VanPoppelens' further compliance, but it did anyway. If the court was trying to impose a civil contempt order, it clearly erred. The court did impose additional sanctions with the finding of contempt. Accordingly, the court could have intended to hold the VanPoppelens in criminal contempt. However, the court cited several reasons for its punishment of the VanPoppelens, only one of which was valid. Absent adequate support for the court's contempt ruling, we reverse. Again, any sanction improperly withheld from the VanPoppelens' monthly reimbursement must be remitted to them.

We affirm the March 1, 2021 order imposing sanctions, but reverse the May 25, 2021, June 3, 2021, and June 21, 2022 orders holding the VanPoppelens in contempt and imposing sanctions.

On remand, improperly collected sanctions must be returned to the VanPoppelens.  We do not retain jurisdiction.


/s/ Elizabeth L. Gleicher
/s/ Noah P. Hood